(No. 2806.  April 21, 1924.)

## CARDENAS et ux. v. ORTIZ.

### SYLLABUS BY THE COURT.

1. In a case brought by persons aged, infirm, and mentally weak, to cancel a deed because procured without consideration and by undue influence, evidence tending to establish ignorance of law is admissible, where the grantee in such deed, while occupying a position of trust and confidence, states and represents that certain illegalities have occurred in the manner of acquiring the land under the provisions of the federal Homestead Laws (U. S. Comp. St. § 4530 et seq.), and that such aged, infirm, and mentally weak persons are liable to lose their entire house and home. Such evidence is not to escape contractual responsibility, but to establish the mental condition brought about in the mind of the person to whom such statements and representations are made.

2. A person who, while occupying a position of trust and confidence, acquires something of value from the person so trusting and confiding, has the burden of affirmatively showing that the transaction was not the result of undue influence, and that the parties were dealing at arm's length, or that the transaction was fair and had in the utmost good faith, and that it was free from fraud or undue influence.

3. Where facts and circumstances are proven by substantial evidence. from which an inference, deduction, or conclusion may be and is drawn by the trial court, it will not be disturbed on appeal.

4. Evidence reviewed, and held to sustain the findings of the lower court that the deed in question was obtained through undue influence.

Appeal from District Court, Colfax County; Leib, Judge.

Action by Encarnacion Cardenas and wife against Gerardo Ortiz. From a decree for plaintiffs, defendant appeals. Affirmed.

H. A. Kiker and H. L. Bickley, both of Raton, for appellant.

L. S. Wilson, of Raton, for Appellees.

OPINION OF THE COURT.

BRATTON, J. The appellees, Encarnacion Cardenas and wife, Paz L. Cardenas, acquired 320 acres of land situated in Colfax county through conveyance to them by a patent from the United States dated August 2d, 1920, pursuant to proof of their compliance with the federal Homestead Laws (U. S. Comp. St. § 4530 et seq.). On March 30, 1920, they conveyed by warranty deed 160 acres of said land to the appellant, Gerardo Ortiz, who is a nephew of the appellee, Paz. L. Cardenas. Upon this was situated all of the improvements constituting the dwelling and home of the appellees. This suit was instituted by the appellees to cancel, annul, and set aside said deed upon the theory that it was executed without consideration and that its execution was induced by duress and undue influence, in that the appellant had threatened to report to the federal officials certain irregularities and illegal acts committed in homesteading said land and making final proof thereon, and that thereby he could and would take the entire tract or homestead away from them: that the appellees, being aged, infirm, weak mentally and physically, uneducated, and ignorant of the laws of the United States and of this state, believed such statements to be true, that appellant further told and represented to the appellees that he had and held their certain promissory note in the sum of $800 and that, unless they conveyed to him one-half of said land, he could and would, by virtue of said note, take from them the entire tract; that said note was fraudulent, fictitious, and forged, and that the appellees owed the appellant nothing whatsoever; that the appellees were aged, infirm, weak mentally and physically, and the appellant was their superior mentally, and had for a long time advised them, and that they had great confidence in him, and that he exercised great influence over

them; that, by virtue of said statements and representations, the appellees were induced to and did execute and deliver to the appellant the deed in question. As a further element of actionable fraud it was specifically pleaded that the parties agreed that the lands to be so conveyed would not contain the improved or cultivated portions of said tract, but that in violation of said agreement the appellant caused the deed to be prepared conveying to himself all of such improved and cultivated parts thereof.

The appellant answered, denying that the deed was procured by duress or undue influence, or that it was executed without consideration, and affirmatively pleaded that it was executed and delivered to him in settlement and discharge of a promissory note which the appellees owed him.

The trial court made many findings, among them being that all of the material allegations contained in the complaint were true; that both of the appellees are aged persons, unable to read or write either the English or Spanish language, and unable to speak the English language; that they were mentally and physically feeble, and hence easily susceptible to influence; that the appellant is a nephew of the appellee Paz L. Cardenas, about 35 years old, much stronger mentally than either of the appellees, and that for a number of years prior to the execution of said deed the appellees had been accustomed to depend largely upon him for advice, and that by reason of these facts he had thereby acquired a great influence over them; that at the time said deed was executed the land in controversy was worth $2,400; that the appellant had the use of all of said lands 4 years, during which time the rental value of the pasture land was 35 cents per acre per annum, and the rental value of the cultivated land was $2 per acre per annum; that the appellant had put into cultivation about 30 acres of said land, the value of his services therefor being $100; that he had constructed three-fourths of a mile of fence thereon, and the value of his services therefor was $80; that he had erected on said land a small house, the value of his services and the materials furnished therefor being $25; and that by the use of said lands the

appellant was fully compensated for all his outlay of said services and materials; that said deed was procured without any consideration whatever; and that its execution was obtained through undue influence. Other specific findings were made adversely to the appellant upon every issue in the case, but we think this statement is sufficient to understand the conclusion we have reached.

A decree was entered, canceling, annulling, and vacating the deed in question, and enjoining appellant from trespassing on said lands or otherwise interfering with the appellees' possession and enjoyment thereof. From this decree the appellant has perfected this appeal.

[1] 1. The first complaint made by the appellant is that the trial court erred in admitting the testimony of the appellee Encarnacion Cardenas to the effect that he did not understand the laws of the United States or of this state. It is urged in this connection that ignorance of law affords no escape from a person's contractual obligations, as every person is presumed to know the law. The witness had previously testified that the appellant told him he intended to report to the federal authorities certain irregularities and illegalities in the manner the appellees acquired said land under the homestead laws, and that he, appellant, would thereby take the entire tract from the appellees. Following this, the witness was asked if he knew the law, to which he responded in the negative. Keeping in mind that the theory of the case then being developed was that the deed in question was executed as the result of undue influence, it becomes at once apparent that the testimony complained of was neither tendered nor considered as an escape from the contractual obligations of the appellees, but rather to establish the effect such statements and threats had upon the mind of the witness; that is, to establish fear or undue influence. Certainly such testimony was relevant to show that the witness became uneasy, and feared he might lose his homestead as the result of something illegal in his method of residence, improvement, or final proof. Such mental condition might be produced in the mind of a person unfamiliar with the

law, and who might be uncertain concerning whether or not he had complied with its provisions and hence had a good title to his homestead, whereas, the mind of a person who was reasonably familiar with the law applicable, and who firmly believed he had complied with its provisions, would not be calculated to be disturbed by such a threat. To illustrate, had such a statement been made to an experienced attorney at law, he would not be alarmed, but would feel secure in his belief that he had complied with the legal requirements, and that his title could not be disturbed. An entirely different result would easily and naturally be produced in the mind of an ignorant, uneducated person, who could not even speak or read the English language, and who could not read the language of his native tongue, and who knew nothing concerning the laws of the land, and hence did not know whether he had complied with their provisions with respect to his homestead. The testimony was relevant, not to escape contractual liability, but as a circumstance tending to establish the mental condition produced by the threats of the appellant.

[2] 2. The next question which commands our consideration is the appellant's contention that the deed was not executed as the result of undue influence upon either of the appellees. As we have previously stated, the findings of the trial court are squarely against the appellant upon this phase of the case, and, of course, they will not be disturbed on appeal, if supported by substantial evidence. It appears from the record that the appellees are aged, infirm, weak physically and mentally, unable to read or write either the English or Spanish language; that the appellant is a nephew of one of the appellees, much their superior in mental strength, and for some years prior to the execution of the deed in question resided about 300 yards from them; that he had aided and assisted the appellee Encarnacion Cardenas in his business affairs, and had assisted in supporting both of the appellees, with the result that he exercised a great influence over them. The appellee Encarnacion Cardenas testified quite fully that he and the appellant had agreed that the appellant should do the work in cultivating and

improving said land, and as full compensation there-
for he should have the use of said lands, both the pas-
ture and the cultivated parts; that the appellant had
told him certain illegal things had been done in the
method adopted in acquiring the land, and that, if
complaint be made to the federal officials, appellees
would lose their entire tract, but that no complaint
would be made, if the appellees conveyed to appellant
one-half of said land, and the court apparently be-
lieved and found all of such statements to be true.
This may partake somewhat of duress, but coming
from a person occupying a position of trust and con-
fidence, and thereby acquiring something of value
without any consideration, it may well be called the
result of undue influence.

[3] From these facts, coupled with the further
fact that they conveyed to him, without any considera-
tion whatsoever, their homestead, including their
house and home, the trial court was clearly warranted
in finding that the appellant had acquired and exer-
cised over them an undue influence in securing such
conveyance. From a careful review of the whole rec-
ord we think there are sufficient circumstances in the
record to warrant this finding. Such an influence is
not susceptible of direct proof, but must be concluded
from the facts and circumstances proven. Where facts
and circumstances are proven, from which an inter-
ference, conclusion, or deduction can be and is drawn
by the trial court, such a finding will not be disturbed
on appeal. Martinez v. Floersheim Mercantile Co. et
al., 27 N. M. 245, 199 Pac. 905. This rule is par-
ticularly applicable to a case of this kind, because the
exercise of undue influence in order to secure some-
thing of value from the person or persons so influ-
enced is but a specie of fraud, and it has been well
said by this court that fraud is properly made out by
marshalling the facts and circumstances surrounding
a given transaction, and deducing therefrom a fraud-
ulent purpose or design where such manifestly ap-
pears. That circumstantial evidence alone is in most
cases available, because fraud is peculiarly a wrong
practiced in secrecy and circumvention, not traceable
to open declarations or proclamations of the wrong-

doer, but by indications which are usually attended with studious efforts to conceal. Anderson v. Reed, 20 N. M. 202, 148 Pac. 502, L. R. A. 1916B, 862.

3. But appellant further says, with much emphasis, that there is no evidence of persuasion or undue influence upon the appellee Paz L. Cardenas. We have previously set forth the facts surrounding the kin, relation, nearby residence, and frequent contact of the parties, as well as the feeble condition, both mentally and physically, of both appellees and the superior mental condition of appellant. The record discloses that this appellee is almost, if not completely, mentally incapacitated, and did not even know what a deed was. She denied ever signing or executing the deed in question, which was doubtless due to her mental condition. The complaint does not tender the issue of mental incapacity as an absolute ground of cancellation of the deed, and all the evidence with reference thereto was limited by the lower court as bearing upon the influence exercised by the appellant upon her. There was no specific evidence of any conversation, coaxing and persuasion, or negotiation between the appellant and this appellee pertaining to the deed. In fact, the first time she appears in connection with its execution is when the appellant took both parties to the notary public for the purpose of having the instrument prepared and executed, a slight circumstance to be considered by the trial court. It does appear, however, that, while she was in such weak and mentally unsound condition, she made the deed conveying her house and home to the appellant without anything whatsoever in return therefor, and this alone, we think, is sufficient to warrant a finding that the transaction resulted from such undue influence. Human experience teaches that a case could be rarely imagined where direct conversations of persuasion and coaxing such a feeble-minded person to execute such an instrument could be proven, except by the person so unduly influenced. Persons who resort to such shady transactions are too shrewd and designing to be thus caught. Such arts are practiced in the absence of witnesses or in the presence of those who are aiding or abetting the transaction. The very facts here disclosed, that is, parting with house and home without

consideration by one who is cursed with poverty, almost 70 years old, infirm, mentally weak and feeble, may well support the conclusion that she was compelled so to do by undue influence of some character. The case of Howard v. Carter, 71 Kan. 85, 80 Pac. 61, is strikingly similar to this one. There one Conrad Schuster, while bodily and mentally weak, and hence easily influenced, conveyed all of his property to his sons-in-law Clark and Howard. It was charged by the plaintiffs that the grantees, with the assistance of their wives, coaxed, persuaded, and unduly influenced the grantor to execute and deliver such conveyance. There was no evidence whatever of any coaxing, persuasion, or undue influence, and yet it was held that the facts and circumstances shown in the case were sufficient to support a finding of the court that he was so persuaded and unduly influenced to convey his entire estate. This was there said:

"At the conclusion of plaintiff's evidence a demurrer was interposed thereto, and overruled. It is claimed that there was no evidence warranting the setting aside of the deeds because there was nothing to show that those deeds had been obtained by undue persuasion or influence by Howard and Clark or their wives. The allegation of the petition was that while Schuster was weak, both bodily and mentally, and thus easily influenced, the defendants Clark and Howard, with the assistance of their wives, 'coaxed, persuaded and unduly influenced him, the said Conrad Schuster, to convey and deed to them all his real estate.' There was no specific evidence whatever of any coaxing, persuasion, or undue influence. It was shown that while Conrad Schuster was in a weak and unsound mental condition he made these deeds conveying all of his property to his two sons-in-law, without any consideration whatever therefor." We are of the opinion that "this was sufficient evidence to be considered by the court upon the issue presented by the petition. In the nature of things it would be a rare case where the details of conversation or conduct could be shown indicating undue persuasion and influence. Such arts would be exercised only in the absence of witnesses, or, at most, in the presence of those whose interest and inclination would impel to their denial. We may as well judge of the cause from an effect as of the effect from a cause. The fact that one mentally infirm does these things might of itself lead to the fair and just conclusion that he was impelled thereto by undue persuasion and influence, and this fact, being proven," we think, "is sufficient to sustain the allegation of the petition. Paddock v. Pulsifer, 43 Kan. 718, 23 Pac. 1049; Hill v. Miller, 50 Kan. 659, 32 Pac. 354."

[4] 4. The equitable doctrine concerning undue influence is a very broad one, and proceeds upon principles of highest morality. It may be said that where facts and circumstances fairly indicate, with reasonable certainty, that such fraud has been practiced, and this is coupled with inadequacy of consideration, and the court in this case specifically found that the consideration was wholly lacking, equity will extend relief, and a chancellor may be easily induced to set such a transaction aside. At 2 Pom. Eq. Jur. § 928, it is well said:

"If there is nothing but mere inadequacy of price, the case must be extreme in order to call for the interposition of equity. Where the inadequacy does not thus stand alone, but is accompanied by other inequitable incidents, the relief is much more readily granted. But even here the courts have established clearly marked limitations upon the exercise of their remedial functions, which should be carefully observed. The fact that a conveyance or other transaction was made without professional advice or consultation with friends, and was improvident, even coupled with an inadequacy of price, provided the parties were both able to judge and act independently, and did act upon equal terms, and fully understood the nature of the transaction, and there was no undue influence or circumstance of oppression. When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the, like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative. It would not be correct to say that such facts constitute an absolute and necessary ground for equitable interposition. They operate to throw the heavy burden of proof upon the party seeking to enforce the transaction or claiming the benefits of it, to show that the other acted voluntarily, knowingly, intentionally, and deliberately, with full knowledge of the nature and effects of his acts, and that his consent was not obtained by any oppression, undue influence, or necessities. If the party upon whom the burden rested should succeed in thus showing the perfect good faith of the transaction, it would be sustained; if he should fail, equity would grant such relief, affirmative or defensive, as might be appropriate."

And at section 951, Id., this language may be found:

"Where there is no coercion amounting to duress, but a transaction is the result of a moral, social or domestic

force exerted upon a party, controlling the free action of his will, and preventing any true consent, equity may relieve against the transaction, on the ground of undue influence, even though there may be no invalidity at law. In the vast majority of instances undue influence naturally has a field to work upon in the condition or circumstance of the person influenced, which render him peculiarly susceptible and yielding—his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weakness, his pecuniary necessities, his ignorance, lack of advice, and the like. All these circumstances, however, are incidental, and not essential. Where an antecedent fiduciary relation exists, a court of equity will presume confidence placed and influence exerted; where there is no such fiduciary relation, the confidence and influence must be proved by satisfactory extrinsic evidence; the rules of equity and the remedies which it bestows are exactly the same in each of these two cases. The doctrine of equity concerning undue influence is very broad, and is based upon principles of the highest morality. It reaches every case, and grants relief 'where influence is acquired and abused, or where confidence is reposed and betrayed.' It is specially active and searching in dealing with gifts, but is applied, when necessary, to conveyances, contracts, executory and executed, and wills."

5. Moreover, ordinarily the burden of proof in cases of cancellation and rescission rests upon the plaintiff, but this general rule bears certain well-defined exceptions, one of which is that, where there exists such trust and confidence between the parties to the transaction of whatever character that confidence may be as enables the person in whom such confidence is reposed to exert it or so influence the opposite person with the result that some transaction financially beneficial to the person trusted takes place, a court of equity will not allow it to stand, unless there be the fullest and fairest explanation and communication of every particular resting in the mind of such person. When such relation of trust and confidence is established, and while it exists a business transaction takes place between the parties inuring to the benefit of the person in whom such trust or confidence is reposed, it is presumptively the result of undue influence, and hence fraudulent, and the burden immediately shifts to him to show that the parties were dealing at arm's length, or that the transaction was fair and had in the most perfect good faith and was free from fraud. 4 R. C. L. 492; 1 Black on Rescission and Cancellation, § 249; 2 Black, §§ 505, 677; 2

Pom. Eq. Jur., § 956; 1 Story's Eq. Jur. § 331; and 2 Jones on Evidence, § 190, and cases there cited.

With this burden resting upon the appellant, we think the evidence highly warranted the findings of the trial court. In fact, we are impressed that the record would well bear no other result. The appellant testified that he did the work and furnished the materials in cultivating and improving the homestead in question with the understanding that he should be given a note in the sum of $800, and, if the appellees were unable to pay it, they should deed him one-half of the land; that such a note was given him; that they could not pay it; that the deed was executed and delivered in pursuance to their agreement; and that he surrendered the note. He detailed the place at which, and the circumstances under which, the note was executed, and states that two certain persons signed it as witnesses. The note was produced upon the trial, and bore no indications of any such witnesses ever having signed it, and he then stated that their signatures thereto had been erased. While on the witness stand he was required to write certain things, and ·from a comparison of such writing with. the note the trial court concluded that the note was forged. Moreover, it appears that at the trial of another case between these parties involving this land the appellant testified that he paid $800 in cash for it. These facts, coupled with the additional and difficult circumstance to explain that these appellees, aged, infirm, and without means, would convey the half of the land upon which their home and dwelling was situated, and this without any consideration whatsoever, clearly warranted the finding of undue influence.

Other questions are argued, but we find no merit in them. The decree of the trial court must therefore be affirmed, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.