[No. 3280. Nov. 17, 1927.]

MELL v. SHRADER (SHRADER et al., Interveners).

[263 Pac. 758.]

L. O. Fullen, of Roswell, for appellants.

J. M. Hervey, of Roswell, and C. J. Roberts, of Santa Fe, for appellee.

## OPINION OF THE COURT

WATSON, J.    J. D. Mell obtained, in the district court, a judgment for the partition of certain lands embraced in an oil lease, in which he claimed to be the owner of an undivided one-half interest.   Partition was resisted by Goldie Shrader, the defendant, holder of the legal title to the other undivided one-half interest.   She is the daughter of G. W. Shrader, deceased.   The widow and other heirs of G. W. Shrader intervened, and also resisted partition.   The defendant and interveners have appealed from the decree and the order confirming the commissioners' report of partition.   Their interests and contentions are identical, and they are represented by the same counsel. It will be convenient to refer to the parties, respectively, as plaintiff, defendant, and interveners.

The oil lease in question was given March 10, 1923, by Midwest Investment Company, to G. W. Shrader.   It was assigned June 1, 1923, by G. W. Shrader to the defendant. An undivided one-half interest was assigned March 13, 1924, by defendant to plaintiff.   In the original complaint plaintiff apparently relied upon the documents mentioned

as establishing his title for the purpose of partition. But defendant, by answer, and interveners, by their petition, set up that the lease was the community property of G. W. Shrader and his wife, one of the interveners, and that the assignment by him to defendant was void, because the wife had not joined in it. By the reply and the answer to the intervention, plaintiff, to defeat the claim of community property, alleged that the title held by Shrader was, from the beginning, in trust for himself and plaintiff. This was denied by the defendant and the interveners.

Parol proof of the trust was objected to at the trial upon the ground that the trust which the offered evidence tended to prove was express, and therefore not so provable. Appellee contended that it was a resulting trust, but, if express, that, by the assignment of an undivided one-half interest to him, it became executed and provable by parol. The trial court held that the evidence tended to show an express, rather than a resulting, trust, but held with plaintiff that, having been executed, it was provable by parol. Thereupon the pleadings were amended to conform to the court's ruling; plaintiff claiming an express trust executed by the assignment, and defendant and interveners denying the facts alleged to establish the trust, and claiming, as will hereinafter appear, the invalidity of both assignments, and fraud on the part of plaintiff in obtaining the assignment to him.

The first contention here made is that the lease was of the community property of G. W. Shrader and wife. The question does not require independent treatment. If the lease was held in trust, a question to be here decided, it was not community property, and the wife's signature was not requisite to a conveyance of it. Mapel v. Starriett, 28 N. M. 1, 205 P. 726.

It is contended that, even if the parol evidence was competent, on the theory that the trust had been executed, it was too vague, indefinite, and uncertain to establish the fact. The evidence consisted of a detailed statement by plaintiff of the circumstances and the agreement under which title was taken in the name of G. W. Shrader,

together with numerous declarations made by the latter during his lifetime to disinterested and reliable witnesses; from which the conclusion was, as the trial court found, and as we agree, almost unescapable, that by agreement the title was taken by G. W. Shrader, in his own name, for the use and benefit of himself and plaintiff. This contention must be overruled.

The question of fraud in obtaining from defendant the assignment of an undivided one-half interest in the lease is perhaps the most important question in the case. The particular fraud claimed is that plaintiff, having himself prepared the document, presented it to defendant as a paper which her father had wished her to sign; made no explanations of its contents or effect; and that she, disarmed by the confidence she reposed in him, did not read it, and in fact thought that it was merely an acceptance of the office of trustee of the property for her father's heirs. Plaintiff denied this, and claimed that he fully explained the matter. In this he is to a slight extent corroborated by the notary public.

The trial court found that defendant made the assignment in an attempt to carry out the provisions of the lease, and concluded that "there was no fraud or false representation, or undue influence, used by Mell in securing the assignment." In his opinion, the trial judge states his view that, to justify a finding of imposition, the evidence must needs have been "extremely clear and convincing."

Defendant and interveners here attack this view of the law. They thus state their proposition:

"That the burden of proof was upon plaintiff to show that plaintiff and Goldie Shrader were dealing at arm's length, and that she was fully advised of all facts relative to the assignment to plaintiff, and the burden was on plaintiff to show that a full disclosure was made to her by him; all this being necessary to establish the contention of plaintiff and to overcome the presumption arising out of the confidential relation existing, of undue influence and fraud. The evidence is insufficient in character and degree to support this burden and overcome the presumption."

Pomeroy lays it down:

"Where an antecedent fiduciary relation exists, a court of equity will presume confidence placed and influence exerted; but where

there is no such fiduciary relation, the confidence and influence must be proved by satisfactory extrinsic evidence." Equity Jur. § 951.

See, also, Thompson on Real Property, § 2876. So, to fix the burden of proof, we must determine whether a fiduciary relation existed.

Where the relation is that of husband and wife, as in Beals v. Ares, 25 N. M. 459, 185 P. 780; or guardian and ward, as in Harrison v. Harrison, 21 N. M. 372, 155 P. 356, L. R. A. 1916E, 854; or attorney and client, as in Re Barth, 26 N. M. 126, 189 P. 499, the presumtion attaches. Counsel suggests, though not urging, that we have here the relation of attorney and client. We agree, however, with plaintiff's counsel that the evidence does not support the suggestion. It does not appear that plaintiff was ever employed or retained in the matter of this lease, either by defendant or by her father. Nor does it appear that plaintiff has sustained that relation to either of them in any matter.

But the rule is not limited in application to the usual and easily recognizable relations such as we have enumerated. "The principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superioritv and influence on the other." Pom. Eq. Jur. § 956; Elliott on Contracts, § 74. The principle was recognized by this court in Cardenas v. Ortiz, 29 N. M. 633, 226 P. 418.

In the case at bar it appears that the relationship was one of intimate friendship, and that all parties had great confidence in each other. That fact is not enough. Thompson on Real Property, § 2884. There is no evidence of former dealings or of habitual looking to plaintiff for advice. It does not appear that the defendant is weak or infirm, either mentally or physically. She is in fact an intelligent young woman of some business experience. There is no inadequacy of consideration, and no actual undue influence. The document which defendant signed is a simple one, which she was entirely capable of comprehending. She says herself that she would not have signed it if she

had taken the trouble to read it. The case is quite different from Cardenas v. Ortiz, supra, and we do not think it one in which undue influence is to be presumed.

The state of the case is this: Plaintiff had a moral, but not a legal, right to execution of the trust. Had he been a fiduciary, a duty would have rested upon him to disclose all facts to defendant, and perhaps to advise her of her rights as another attorney would have done. Not being a fiduciary, he was at liberty to obtain the assignment from her by fair means, but not by fraud, duress, or undue influence. The question is whether plaintiff misrepresented the nature of the instrument. The evidence was in conflict. The court found against it, upon the theory that the defendant had not sustained the burden resting on her to prove it by clear and convincing evidence. In this we see no error.

Finding no fraud in the assignment from defendant to plaintiff, we come to the assignment from G. W. Shrader to the defendant. This is said to be void, first, because, at the time of execution by G. W. Shrader, the assignee's name was not inserted, it being merely an assignment in blank; and, second, because there was no delivery.

Whether the assignment was in blank and defendant's name inserted as assignee after Shrader's death was a question of fact, decided upon conflicting evidence. Defendant and her sister, one of the interveners, testified that, soon after their father's death, which occurred on July 20, 1923, they met plaintiff on the street, and there learned, for the first time, that the assignment had been made, and that plaintiff then told them that G. W. Shrader had made the assignment in blank, and that it would be necessary to agree upon one of the family to take the title; the purpose being to facilitate the handling of the lease, and to avoid troublesome probate proceedings, and that it was thereupon agreed that defendant's name should be inserted in the assignment. Plaintiff testifies that he told the ladies, on that occasion, that the assignment had been made to the defendant, but that, if the family preferred, he could strike her name out of the assignment

and insert another. The court very carefully considered this conflict in the evidence, and concluded, under all the circumstances, which 'it is unnecessary to set forth here, that defendant and her sister had either misunderstood what plaintiff said at the time, or, in the course of two years, had become confused. We can see no reason for disturbing this finding.

Was there a delivery? Defendant had no possession or knowledge of the document until after her father's death. After execution, it was left with plaintiff to care for, and that the business might be handled as it had been. Plaintiff had had possession of the lease from the beginning. Nothing was said about a delivery of it to the defendant. The assignment was not a separate document. It was indorsed on the lease. It is argued that the correct conclusion from these facts is that the assignment was left with plaintiff merely as custodian; that during Shrader's lifetime it was subject to his dominion and control, and that, if the opportunity had arisen to make a sale, Shrader would have canceled or ignored the assignment, and himself transferred the lease.

Authorities are cited to the effect that, merely leaving in possession of the scrivener, or placing in possession of an agent, or third person, without instructions to deliver to the grantee, does not show an intent to relinquish control, and to part with title, and hence does not constitute delivery. But plaintiff was not a mere scrivener, agent, or third person. He held possession as one having an interest. The assignment was the result of agreement between the two equitable owners. Placing the document in plaintiff's possession was placing it beyond Shrader's control. In the past the lease had been handled by agreement between the two. Stipulating that it should be so handled in the future meant by agreement between plaintiff and defendant. Moreover, since the assignment had been indorsed on the lease, it would have been difficult, if not impossible, to conceal the fact of its execution. When it came to be recorded, or to be passed to a purchaser, the fact of assignment would have appeared, and it would have been necessary to call on defendant to convey the title. The facts stated and

these considerations, we think, warrant the conclusion that Shrader intended to pass title in præsenti, and to relinquish control, and that he actually did so.

It is contended that the assignment to plaintiff was made in violation of the trust agreement, and of the rights of the intervening cestuis. It is argued that the agreement did not contemplate a division of the trust estate; but that Shrader should take it in his own name and hold it for the benefit of plaintiff and himself, and handle, sell, and dispose of it as they might desire; that, while a division would have been unobjectionable so long as Shrader lived and held the title, after his death and the passage of his beneficial interest to his heirs there could be no division without consent of such heirs; that the assignment was not in execution, but in termination, of the trust.

It may be admitted that an active trust, involving the performance of duties by the trustee, or the exercise of discretion by him, must be carried out and preserved according to its terms. In such a case nothing short of consent of all interested parties will be sufficient to justify a change. If the donor or trustor be dead, the trust must continue, even though the trustee and his cestuis may agree to terminate it. But we have found no authority for the proposition that such is the case with a mere naked or holding trust. Indeed, we understand the basis of the present contention to be that it was of the essence of this trust that the legal title should remain in the trustee, so that the property might be disposed of as a whole. We do not think the facts justify such view.

The statement of the trust agreement, on which defendant and interveners rely, is taken from the amended complaint. It is in this language:

"Plaintiff called upon Shrader and proposed to him that he (Shrader) undertake to obtain the lease; that he (Shrader) would take it in his own name *and hold it* for the benefit of himself and plaintiff, and to *handle, sell and dispose of the same,* as they might desire in the future, and to divide the expense of *carrying* the same, and the proceeds of *handling and selling it.*"

It does not appear from this that Shrader assumed any active duty or responsibility with respect to the property. It does appear that the parties were to handle, sell, and dispose of it as they might agree. There was no difference in their control and rights over the property, except the bare fact that the legal title stood in the name of Shrader. The reason for the arrangement appears; namely, that plaintiff was on unfriendly terms with the person controlling the Midwest Investment Company, and thought that he would be unable to obtain the lease at all; while Shrader was on good terms with him, and could obtain it. So it was a mere matter of expediency and convenience. Whether the reason for the original arrangement continued until after the death of Shrader we cannot determine, because that question was not made an issue. So, as it seems to us, the gist of the agreement was that the title, taken in Shrader's name for convenience should be thereafter disposed of as they might agree. In law, title was in Shrader. In equity, it was in Shrader and Mell in undivided interests. The assignment merely conformed the legal title to the equitable, and left their joint control of the property and their respective rights just where they were under the trust agreement. The assignment was therefore an execution—not a violation of the trust. The property and its control were no more "divided" after the assignment than before. It is the decree which effects the division. It is not the decree, but the assignment, which is here attacked.

One or two other contentions are made here. We do not notice them independently, because they seem to be disposed of by what we have already said.

As we find no error in the judgment, it will be affirmed, and the cause remanded, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.