[No. 3154.   June 12, 1930.]

PHELAN v. PHELAN.

[289 Pac. 996.]

Rodey & Rodey, of Albuquerque, for appellant.

Downer & Keleher, of Albuquerque, for appellee.

## OPINION OF THE COURT

BICKLEY, C. J.

On full rehearing and reconsideration by the entire court as now constituted, a conclusion is reached different from that first announced, and the original opinion is therefore withdrawn.

Plaintiff (appellee) brought suit against defendant (appellant) to quiet title to certain real estate in Bernalillo county. The defendant filed an answer, denying the title of the plaintiff; and a cross-complaint, setting up title in herself and asking that such title be quieted as against the plaintiff. Upon trial before the court, the issues were found in favor of the plaintiff and title quieted in him as against the defendant. The trial court further ordered that certain taxes paid by the defendant upon such land should be repaid to her and decreed a lien upon such real estate, as security for such repayment. Plaintiff derived title as an heir of his father, Thomas F. Phelan, deceased, and by conveyance from Mary A. Phelan, the wife of said Thomas F. Phelan and mother of plaintiff. It is not contended that the plaintiff's title is insufficient, unless plaintiff's predecessors had lost title to said real estate prior to the death of Thomas F. Phelan.

The evidence as to the title of the defendant and cross-complaint was as follows:

"Tax sale certificate against the property for the taxes for the year 1907, assigned to the defendant, and two tax deeds, one dated August 27, 1924, and the other August 17, 1921."

It is conceded by the appellee that these documents are regular on the face thereof, and that, in the absence of fatal defects in the proceedings leading up to the issuance of the tax certificate and tax deeds, this evidence was suf-

ficient to show a prima facie paramount title in the defendant. Further facts sufficiently appear in the opinion of the trial court filed in the cause, as follows:

"The facts in the case are rather simple. The Taxes of Thomas Phelan on this property were delinquent for many years, as shown by the record. For the year 1907 and other years there were tax certificates outstanding in the hands of the County. The next fact to be considered as shown by the record is that in August 1921 a proceeding was had in this Court, No. 143 on the Tax Docket, in which a complaint was filed against Thomas Phelan for taxes for all of the years from 1905 to 1921, except 1907. To this complaint an answer was interposed by the defendant as 'Sister of Thomas F. Phelan, defendant.' On this complaint and answer a judgment in the nature of a compromise was rendered by the Court fixing the amount of taxes to be paid by Thomas F. Phelan for all years delinquent except 1907. At the same time the defendant, the sister of Thomas Phelan, purchased the tax sale certificate for the year 1907 from the County and recorded the same and after a lapse of three years procured a tax deed. The evidence shows that she then paid from her own money the delinquency as fixed by the judgment, this delinquency having been paid in 1921.

"The Court finds as a matter of law that the tax deed is regular on its face and is not open to any attack for deficiency of procedure or anything of that sort. The defendant claims her title under this tax deed.

"The plaintiff in the case, who is a son of Thomas F. Phelan, deceased, who died intestate, claims title by virtue of inheritance and by conveyance from the wife of Thomas Phelan, deceased. The property in question was the community property of Thomas Phelan, deceased, and his wife.

"The defendant has testified that she paid the taxes to assist her brother and claims that he knew of her act in taking the tax title. She also testified to various oral conversations with her brother in which she claims her brother had promised to give her the land or some interest

in it. This presents a somewhat difficult situation, and a hard one. The Court, however, will try to apply the salutary principles of law which the courts have found just and equitable and whatever result follows will be the decision of the court. It cannot be denied that the defendant was either acting as the agent of her brother or, what would be more serious, acting as a volunteer in her brother's name without the knowledge of her brother. The record, of course, does not indicate that Thomas Phelan was ever served with the answer. It does show that he never appeared in the case and there is no showing of any authority on the part of his sister to volunteer and appear for him, although the Court does not doubt that she appeared with his knowledge, and if the latter is the case, as the Court thinks it must be, she must be the agent of her brother, acting for him. If she is acting as the agent of her brother it is, of course, impossible for her to acquire a hostile title to him.

"We must remember that Thomas Phelan is dead and we know that he left no will and beyond that we cannot impute to him any wishes or desires by verbal testimony which this Court or any other court can carry out. If Thomas Phelan had desired this property to go to his sister he should have deeded to her his interest in it or he should have willed it to her. The Court cannot see how he could have conveyed his wife's interest in any event to his sister unless his wife joined in the conveyance.

"It will not do to impute some desire on the part of a man who is dead on mere verbal testimony. The deceased's son is here and his rights must be respected. This Court cannot take the inheritance away from him on verbal testimony. The defendant, after procuring her tax deed, paid the taxes, the sum total, personally and took receipts for all the subsequent years in the name of her brother. Even if it were to be conceded that we could permit a dead man to waive his rights on oral testimony and say that Phelan had agreed that the hostile title should be effective notwithstanding the relation of principal and agent, yet I do not see how he could divest his wife's community interest by any such arrangement. The cases are hard and I see in this case a very obvious family difficulty

but under the law it is a man's wife and children who are his heirs and in order to divest his heirs and his wife of title there must be some sufficient record of conveyances. A man cannot divest his wife and heirs of property by verbal understandings, and certainly this court cannot take verbal testimony of the intentions of a dead man and give it the force and effect that is asked for in this case. I have no doubt that the defendant was acting in what appeared to her to be good faith and was guilty of no active fraud,—that is very apparent,—but she cannot be the agent on one hand and acquire a hostile title on the other which has the effect of taking the title away from a man's natural heirs. It seems to me that the Court must adhere to these very fundamental principles which are salutary ones and which have been approved by countless courts over a course of many years. They are for the protection of society. Thomas Phelan is dead, and if he neglected to do something in his lifetime to divest his heirs, if he could do it, this Court cannot after his death, on verbal testimony, do it for him. These observations lead the Court to hold that the plaintiff should prevail on his title; and the Court further finds that since the defendant was not guilty of any fraud but was acting on what seemed to her good faith, the defendant is, of course, entitled to and will be given an equitable lien on the premises involved for the amount of all of her advancements both on the tax deed and on all taxes paid and she will be given interest at the legal rate from the date of the payment of the lump sum and on payments subsequent to that time will be given interest from the date of payments."

Certain findings of fact and conclusions of law were requested by defendant and cross-complaint, some of which were adopted and some refused. In the final decree, the court found:

"That at the time the said defendant Eleanor L. Phelan acquired said tax deeds she was the agent of Thomas F. Phelan, the original patentee of the lands therein described, and any and all title which the said Eleanor L. Phelan acquired under and by virtue of such tax deeds she acquired in trust for the use and benefit of Thos. F. Phelan and his successor in interest, Chas. J. Phelan, the plaintiff in this case."

The determination of this review turns upon the question presented by this finding. We have no fault to find with the proposition that if a person, who stands in the relation to agent authorized to pay taxes upon the property of another, acquires during the existence of the agency a title hostile to his principal, the title acquired will be held in trust for the owner. The case narrows to the question: Was the court correct in finding that appellant was the agent of the owner of the land at the time she acquired the title in question?

We pass by the question as to whether under undisputed evidence a finding of the existence of agency is a finding of fact or law, or is of mixed fact and law. We also deem it unnecessary to consider that character of agency characterized as agency by estoppel.

Examining the record, it is clear that the court found agency to exist as that term is generally understood, i. e., the relation which results where one person, called the principal, authorizes another, called the agent, to act for him in business dealings with third persons. It is a fundamental principle that the relation of agency can exist only by the will of the principal. The question whether Thomas F. Phelan authorized his sister, Eleanor Phelan, to act for him in the matter of the payment of the taxes upon his property, or authorized her to act generally for him in business dealings with others, from which an inference may be drawn that she was thereby charged with the duty of paying his taxes, is undoubtedly a question of fact to be determined from the evidence in the case.

The trial court embodied certain specific findings in the opinion heretofore quoted. The significant fact is thus found:

"* * * The court does not doubt that she (Appellant) appeared (in the tax suit against Thomas F. Phelan) with his (Thomas F. Phelan's) knowledge, and if the latter (appearance with knowledge) is the case, as the court thinks it must be, she must be the agent of her brother, acting for him."

We need not question that the trial court correctly estimated the consequences of an appearance by appellant in the tax suit as agent for and with the knowledge of her

brother. Our inquiry goes to the fact. On what evidence did the court "not doubt it" and "think it must be?"

The fact is evidently found as a choice between two theories.

"It cannot be denied," reasoned the court, "that defendant was either acting as the agent of her brother, or, what would be more serious, acting in the brother's name without the knowledge of her brother."

The court says:

"There is no showing of any authority on the part of his sister to volunteer and appear for him."

Disregarding for the moment the fact of appellant's appearance in the tax suit, we think the court correct in saying that there was no showing of authority to appear, but wrong in inferring that she must have appeared with her brother's knowledge. A minute inspection of the record fails to disclose any evidence that he knew that she was interested in his delinquent taxes, contemplated any action regarding them, or any appearance for him in any suit. Indeed, the contrary might well be inferred. Appellant did claim that her brother "knew of her act in taking the tax title." Not at the time, however. She told him after she had obtained the deed, and her legal status was fixed. The court is entirely in error in saying "She also testified to various oral conversations with her brother in which she claims her brother had promised to give her the land or some interest in it." There is no such testimony in the record.

So the fact that appellant did appear in the tax suit against her brother is the only evidence which can be invoked to support the inferences of knowledge and authority. If appellant had actually appeared "for him," as the trial court evidently supposed, and as we did originally, the fact would furnish substantial support of the inferences. But, on more careful examination of the evidence, we conclude that it shows an appearance, not for Thomas F. Phelan, but for herself.

Appellee contends that "the settlement of the taxes and the taking of the tax title were all a part of a single trans-

action." The trial court probably so considered, and we agree. The essential thing which appellant did was to purchase from the county a tax sale certificate for the year 1907. At the same time she discharged all delinquent taxes and all other certificates held by the county. This was, of course, a necessary incident to the accomplishment of her purpose of acquiring the title. The two acts constituted the "transaction." In connection with the latter occurred the proceedings, the peculiarities of which give rise to the only suspicion upon appellant's title.

Appellant had been directed to the special counsel for the state tax commission to attend to the matter for her. He prepared a complaint, naming the state as plaintiff, and Thomas F. Phelan as defendant. Personal judgment was prayed against Phelan, as well as a lien upon the land, for all delinquent taxes. Most of them were already in the form of tax sale certificates held by the county. He prepared an answer entitled in the cause, and commencing "Comes now Miss Eleanor L. Phelan, sister of Thomas F. Phelan, defendant, and for answer to the complaint * * * says." The answer alleges that Thomas F. Phelan is the owner of the property. It says that "this defendant" admits the assessments, and that the property was subject to assessment; that "this defendant" admits the sales to the county; it says "defendant" denies that "the defendant, Thomas F. Phelan" owes the taxes, but alleges that the assessments were excessive and unjust; "this defendant" prays an ascertainment of the reasonable amounts due, and offers to pay them. The answer is signed "(Miss) Eleanor L. Phelan, Defendant." He also prepared a judgment reciting "This cause came on regularly for hearing before the court on the 17th day of August, 1921, upon complaint of the plaintiff, and the answer of the defendant, and it appearing to the court that the defendant Thomas F. Phelan and the said described property are justly indebted," etc. It adjudged a personal indebtedness against Phelan for the taxes adjusted.

With these papers appellant and the special counsel went before the then district judge. He signed the judgment. All papers were filed the next day with the clerk,

and on that day the county treasurer issued to appellant a receipt evidencing payment of "($219.65) for taxes as per court order." On subsequent dates the county treasurer issued a separate receipt for each of the assessments so discharged. In form they were certificates of redemption, and read either "Received of T. F. Phelan, by Eleanor L. Phelan" or "Received of Unknown Owner by Eleanor L. Phelan," according as the assessments had been made. Each receipt bore the reference "Court Order No. 143," that being the docket number of the suit.

We find in these proceedings no fact and draw from them no inference which puts appellant in the position of agent of her brother. Irregular as they were, they were patently designed to accomplish what appellant had a right to do: Purchase a tax sale certificate and discharge other outstanding liens. It is not reasonably to be presumed that this woman, without advice from counsel of her own, directed or even understood the details of accomplishing that purpose. She naturally intrusted the matter to the officials with whom she was making the settlement. The only importance of these proceedings being the light they are said to throw upon the question of the agency, it does not seem to be a case for applying the maxim that all are presumed to know the law. If appellant had represented herself to the special counsel and the court as the authorized agent of her brother, the case might be quite different. She did not. She did not "appear" as agent, nor pretend to be.

Equity should carefully scrutinize the acts of a fiduciary. Mell v. Shrader, 33 N. M. 55, 263 P. 758. But not to the extent of assuming the existence of the relation. Close and confidential as were the relations between this brother and sister they do not themselves constitute her a fiduciary. This is not a case of undue influence. It is not a case of breach of confidence; because in the particular matter, none appears to have been invited or reposed.

As the trial court suggests, the case has a background of an estranged wife, an absent son, unable or unwilling to care for his sick and impoverished father, and his sister, devoting herself to his care. This is all immaterial. Noth-

ing in those facts made appellant a fiduciary. It may help to explain her purpose, but it does not render it inequitable.

We conclude that appellant did not acquire her title in trust. Hence the judgment must be reversed. Appellant has established legal title to the land. The cause is remanded, with a direction to enter judgment dismissing appellee's complaint, and quieting appellant's title as she prays in her cross-complaint.

It is so ordered.

WATSON, PARKER, CATRON and SIMMS, JJ., concur.