134 P.2d 544

**SALAZAR et al. v. MANDERFIELD.**

No. 4732.

Supreme Court of New Mexico.

Jan. 25, 1943.

Rehearing Denied March 18, 1943.

J. O. Seth and A. K. Montgomery, both of Sante Fe, for appellant.

C. C. Catron and John C. Watson, both of Santa Fe, for appellees.

MABRY, Justice.

This is a suit involving the cancellation and setting aside of a quit-claim deed executed by plaintiffs-appellees to defendant Eugenia Manderfield, by which deed all the interests of the plaintiffs-appellees to real property which they claim they were entitled to take as heirs of an aunt, one Cyrilla B. Manderfield, were conveyed to defendant-appellant. The court entered judgment cancelling the deed and this appeal follows. Hereinafter in this opinion the Salazar heirs, plaintiffs below, appellees here, will be referred to as "plaintiffs," and Eugenia Manderfield will be referred to as "defendant," their respective designations in the court below.

Defendant Manderfield died within a few days after the entry of the judgment of the trial court, and the proceeding was revived against Josefita M. de Otero as executrix and as surviving trustee under the last will and testament of the said decedent, and this appeal was taken by such executrix and surviving trustee.

The suit was instituted in the district court by the widow and four of the five children of Enrique Salazar, deceased, the said Enrique Salazar being a brother of the said Eugenia and Cyrilla B. Manderfield, whom he pre-deceased a few years. The widow was adjudged to have no interest in the controversy, one of the original plaintiffs withdrew before the trial and the judgment rendered and here appealed from was in favor of the three remaining plaintiffs.

Cyrilla B. Manderfield, whose real property is here involved, died February 23, 1916, single and intestate, and her estate was never administered. Her father, and thereafter her mother, both pre-deceased her many years. The mother's name was Josefa Salazar de Manderfield. Enrique H. Salazar, above mentioned, defendant Eugenia Manderfield, Florentina Manderfield and the said Josefita M. de Otero were brothers and sisters.

The deed in question, and which was so cancelled and set aside by the judgment and decree of the district court, purported to convey the interests of plaintiffs, the Salazar children in all the property of which their aunt Cyrilla Manderfield died seized. This property was described as being not only that certain property devised to the said Cyrilla Manderfield by the will of her mother, Josefa Salazar de Manderfield, who died in 1907, but also all other real estate acquired by Cyrilla separately and as co-tenants with her sister Eugenia, the defendant. It is the real property of the aunt Cyrilla who died in 1916, as above stated, which plaintiffs would hereafter be able to subject to their claim of interest as heirs at law because children of Enrique Salazar, deceased, if the deed theretofore given by them to defendant might be cancelled.

This deed, dated in April, 1930, in favor of Eugenia Manderfield, purported to convey all right, title and interest of plaintiffs in and to any and all lands in Santa Fe and Guadalupe counties which they may have acquired by inheritance from their deceased aunt, Cyrilla Manderfield, as well as such right, title and interest in and to any such lands and real estate which may have been acquired by their father, Enrique Salazar, through inheritance from his deceased sister, the said Cyrilla.

The principal question presented in this case arises over plaintiffs' contention that they were over-reached and imposed upon by their aunt Eugenia, the defendant. They claimed that, at all times, she occupied a fiduciary relationship to them; that she secured the deed by failing fairly to disclose all she knew about the rights of plaintiffs in the property they were be-

ing asked to convey; that she represented to plaintiffs at the time that they had no interest of any kind or character in the property mentioned; and that, therefore, in signing the deed the plaintiffs would be giving up no rights of any kind but merely furnishing defendant a properly acknowledged instrument which could be placed of record.

Defendant Eugenia Manderfield contended that she had, theretofore, and between the date of June 1, 1908, the date of the document, and the date of Cyrilla's death in 1916, received from the hands of the said Cyrilla, her sister, a duly executed deed conveying to her all of Cyrilla's real property inherited from her mother (this being all the real property which Cyrilla owned at the time of her death) and that, therefore, the quit-claim deed secured from the Salazar heirs thereafter, in 1930, actually conveyed nothing in which they had an interest; that defendant wanted and needed a deed from plaintiffs merely to give her a merchantable title—a conveyance in proper form and properly acknowledged. The Cyrilla Manderfield deed of 1908 did not have an acknowledgment and, therefore, it would not be entitled to be placed of record. If this deed of 1908 from Cyrilla to defendant operated as a good and sufficient conveyance—if it were actually, and for the purpose of then and there conveying, delivered to defendant during the lifetime of Cyrilla—then Cyrilla died seized of no lands inherited from her mother, Josefa Salazar de Manderfield. However, the trial court held that Cyrilla's deed of 1908 was not delivered to the defendant during the lifetime of the grantor and was, therefore, no conveyance.

An additional question arises as to whether, in any event, the lands referred to in the pleadings (which includes lands other than those which were inherited by Cyrilla, and in which plaintiffs claim to have an interest because they were lands of which their aunt Cyrilla allegedly died seized) were in fact the lands of their aunt at the time of her death. Defendant claims, as to each of the four tracts or descriptions of property, which will be hereinafter referred to as groups (a), (b), (c) and (d), that her sister Cyrilla had no interest therein at the time of her death, but that they were then, and at the time of the trial, defendant's sole and exclusive property. If this be true, and the trial court had so found upon supporting evidence, defendant's contention that a cancellation of plaintiffs' deed to her could effect no benefit to plaintiffs might become important. That is to say, regardless of the circumstances under which defendant secured the deed—which she always maintained was fairly and honestly obtained—if there be no property for plaintiffs to inherit from Cyrilla, then an outstanding deed quit-claiming something never owned would, probably, result in no harm in any event. Plaintiffs would then be persevering to have corrected a situation or condition allegedly wrongfully imposed but the correction of which

could, nevertheless, afford them only sentimental, as distinguished from financial, relief—a remedy which parties to litigation seldom pursue so diligently as far as an appellate court. It is because the 1908 deed from Cyrilla is challenged as not having been delivered during the lifetime of the grantor and thus as being no conveyance at all, and because of the further contention that Cyrilla also died seized of certain other lands herein described as tracts (b), (c) and (d) that the 1930 deed secured from plaintiffs becomes important.

The trial court held against defendant, not only as to her claim that she had fairly and legally secured the deed from plaintiffs, but likewise as to her contention that the property claimed to be that of Cyrilla at the time of her death, was in fact the property of defendant. So, we will notice the two questions, one as to ownership of certain groups of property mentioned and the other as bearing upon the point whether Eugenia did during the lifetime of her sister Cyrilla and for the purpose of actually conveying, then and there, receive from her hands the deed of 1908 upon which defendant relies, all in addition to the principal question which relates to the circumstances surrounding the making and execution by plaintiffs, in 1930, of the quit-claim deed.

All the lands which it is claimed Cyrilla Manderfield owned at the time of her death may be briefly described, as hereinbefore stated, as falling into four groups, without other or more specific designation,

viz.: (a) Lands inherited by Cyrilla from her mother, Josefa Salazar de Manderfield; (b) the so-called Gortner Tracts; (c) the Cordova Tract; and (d) lands allegedly conveyed to Cyrilla by the deed of 1890. The trial court found that Cyrilla died seized of all the properties mentioned under the above groupings. There can be no question of the substantiality of the evidence to support this finding insofar as it relates to the first three of said groups. These findings are all favorable to plaintiffs' position.

Appellant argues her assignments of error under four separate points, viz.: 1. Cancellation of an instrument can be had only on clear and convincing evidence, and this rule governs in the application of the substantial evidence rule. 2. Plaintiffs held the bare legal title while defendant held the beneficial title, and that under such circumstances equity will not cancel the deed. 3. Plaintiffs failed to prove the allegations of their complaint that Cyrilla Manderfield died seized of the properties mentioned.

Counsel for plaintiffs urge that since the questions set out and relied upon in defendant's brief suggest neither failure of findings to support the conclusions of law and judgment, nor failure of the conclusions of law to support the judgment, that the attack must be intended to challenge the evidence as being insufficient to support the findings. In this connection, however, plaintiffs suggest the absence from defendant's brief of any direct or explicit

challenge or reference to any of the findings of ultimate facts in issue in the case, although it is agreed that probative facts are there discussed. Notwithstanding the suggestion thus made, counsel for plaintiffs proceeds, nevertheless, to answer each of the above stated points. We take it that he entertains doubt only as to whether counsel for defendant has substantially followed the rule applicable when challenging the evidence as being insufficient to support the findings, but does not urge consideration of this point.

Plaintiffs challenge the contention that the burden of proof and quantum of evidence required under the circumstances of this case is unusual or unlike that burden assumed and the quantum of evidence required in some other cases of like character, and similarly presented. Plaintiffs urge that this is not a suit in the ordinary sense seeking cancellation of a deed upon charges of fraud. They say that upon the basis of the court's judgment, the issue is much more restricted. They contend, as we have hereinbefore said, that their complaint tendered a simple issue, viz: That defendant used her position of trust and confidence to obtain from plaintiffs a conveyance by failure to fairly disclose all facts known to her, and by the false representation that the plaintiffs had no interests in the properties thus conveyed; but that, since the answer with its affirmative defenses, raised particular and specific issues, these issues varying as they involved the different properties embraced in the deed; that, thus,

the burden of proof as to such affirmative defenses, rested upon the defendant, if such question, in the final analysis, becomes important.

With reference to point 3 relied upon by defendant, it clearly appears as to the lands inherited from Cyrilla's mother, that defendant took the laboring oar when she admitted that certain property was left to Cyrilla by her mother's will and then affirmatively alleged that Cyrilla had, nevertheless, subsequently conveyed it to the defendant. We find, also, the answer does not deny that the so-called "Gortner Tracts" were deeded to Cyrilla and defendant as co-tenants; but defendant assumes the burden when she undertakes to plead and show that the deed to this particular property was made in part satisfaction of a debt due the mother, Josefa, and that the debt so due passed under the mother's will and hence thereafter by Cyrilla's conveyance to the defendant—that Gortner, who conveyed to Cyrilla, had, in fact, always held title in trust for the mother. Obviously on this issue likewise, and upon which the court likewise held against her, the defendant had the burden.

Then, as to the "Cordova Tracts", there is no denial that this land was conveyed to Cyrilla and defendant as co-tenants, as alleged in the complaint. The answer injects the affirmative issue that nevertheless, and notwithstanding the state of the record as to co-tenancy of the two sisters, Cyrilla had in fact never paid any part of the consideration and so obtained no legal interest

in the property. The trial court likewise found against her in this contention. Defendant, by pleading and proof, was here endeavoring to hold Cyrilla as trustee of a resulting trust in favor of the defendant who had paid all the consideration in the purchase of this property. The burden was upon the defendant to sustain this affirmative defense.

As to the properties conveyed to Cyrilla in 1890, subdivision (d), there was simply a denial on the part of the defendant, which left the proof of the allegation resting upon plaintiff; but, obviously, requiring no extraordinary quantum of evidence. The trial court likewise found in support of plaintiffs' contention here. Plaintiffs' proof of ownership in Cyrilla of these particular lands rests largely, if not entirely, upon record proof that she did take them by due conveyance in 1890. Defendant urges that this is not prima ·facie proof of ownership at the time of her death, which is the important query. Plaintiffs invoke the rule of presumption of continuance, as against change, citing in support 28 C.J. 28, "Evidence". Without holding that plaintiffs have sustained the burden here resting upon them, a question we pass because not necessary to decide, we must observe that when plaintiffs have shown that Cyrilla died seized of any of the real property in question, which they have shown, they have sustained their contention that it was not a bare legal title which they proposed to convey by the 1930 deed in question—that they were conveying an interest in at least some of the property in question.

■ Therefore, as plaintiffs urge, we come to this simple situation regarding the ownership of the properties: Unless the defendant has made good her affirmative allegations, the plaintiffs did, admittedly, as heirs of Cyrilla, own some interests in the properties which they conveyed to the defendant by the 1930 deed; that this conveyance was executed at the defendant's request and was wholly without consideration is admitted. The trial court found in support of the claim of ownership in Cyrilla; and there was substantial evidence in the record to support the findings, as to at least three of the tracts. Plaintiffs need not show that Cyrilla died seized of all the properties described, although the trial court found they had done so. Counsel for plaintiffs cautions us that this is not a suit to quiet title, and this we understand. So, the judgment cancelling must stand or fall as a whole. "A deed which is void in part because of fraud will be void as to the whole." 18 C.J., Deeds, § 177, 26 C.J.S., Deeds, § 68; 9 Am.Jur. page 403.

The point suggests itself to counsel for plaintiff—and, we think, quite appropriately—that in view of the fact that the decision of the court rested upon the finding that defendant sustained to the plaintiffs the relation of a fiduciary, and in thus failing to fairly disclose to them what interests they had in the properties, the deed should be cancelled, it matters not what quantum of evidence rule we apply. Plaintiffs relied both upon false representations on the part of the defendant and plaintiffs' reli-

ance thereupon when the deed was executed, and the fact that defendant occupied this fiduciary relationship and did not make fair and complete disclosure.

The court chose to rest its decision and judgment upon the fiduciary relationship rather than upon that of false representation. Defendant cannot successfully challenge the court's finding that the fiduciary relationship existed and that it was employed to the interest of the defendant and against the interests of plaintiffs. The fact of such relationship clearly appears from the defendant's own testimony. She took pride, suggests counsel in referring to her testimony, in exploiting, as it were, the high esteem in which she was held and the high regard, trust and confidence which was reposed in her by plaintiffs; and, the record seems to support this appraisal.

Plaintiffs urge that the authority relied upon by appellant cited to the proposition that strong and convincing proof, unlike that which sustains the burden in ordinary cases, is required to cancel a deed for fraud, mistake, duress, undue influence, etc., is not in point here. We do not undertake to discuss the question, as it affects the substantial evidence rule so commonly invoked, whether, or in what manner if in any way, an appellate court must appraise differently evidence in those cases where "strong", "precise", or "clear and convincing", proof is said to be required. The question before us is governed, rather, by that clear and well established principle applying to transactions between parties

where a fiduciary relationship is shown to exist.

There are two aspects to this case, or two contentions which plaintiffs urge in their complaint and endeavor to sustain by their proof, as we have said. One has to do with false representations allegedly made to plaintiffs by defendant and the other relates to the securing of an unfair and inequitable advantage for the fiduciary by not disclosing all facts known to her as having a bearing upon the question of the possible interest of these heirs in the property or inheritance of their aunt.

The trial court bottomed its judgment upon the claim that there existed such a fiduciary relationship and that this was exercised illegally and to the detriment of the plaintiffs when the deed in question was secured. The court, obviously, ignored the contention that there were also misrepresentations of which it should take account. It must have felt either that the proof upon that issue was insufficient or that a decision and judgment resting upon the charge was unnecessary. There was, we hold, evidence to sustain the court's findings upon the issue it chose as determinative. The defendant herself aided materially in establishing the relationship, as we have already observed, and there is sufficient evidence, though conflicting it may be, to support the court's reasoning that the relationship had been abused.

The parties were not dealing at arm's length, it must be said when we view the matter, as we must, in support of the court's

findings, therefore any finding that false representations were made was not essential to recovery. The trial court sensed this distinction, as is shown by its findings and conclusions. Therefore, much of the authority relied upon by defendant is not in point.

When we say, as we do, that the evidence supports the findings, that the defendant, a fiduciary, "failed to disclose to plaintiffs that they had any rights whatever in the property involved in the conveyance; that the plaintiffs executed the said deed in the belief that they had no such rights, and the defendant so knew", clear and often-enunciated principles of law may be applied. Cases involving this principle can be found in abundance, two or three, at least, from New Mexico.

Upon the question of what duty a fiduciary owes, under like, and other circumstances, see the following cases: Cardenas v. Ortiz, 29 N.M. 633, 226 P. 418; Beals v. Ares, 25 N.M. 459, 185 P. 780; Harrison v. Harrison, 21 N.M. 372, 155 P. 356, R.L.A.1916E, 854; Mell v. Shrader, 33 N.M. 55, 60, 263 P. 758.

In the case of Mell v. Shrader, supra, we recognized the general rule that a duty ordinarily rested upon a fiduciary to disclose all known facts. In the Cardenas case, supra, in an opinion written for the court by Mr. Justice Bratton, we find a helpful discussion of the principles governing a transaction wherein a fiduciary obtained a benefit or an advantage; where the principle that the fiduciary must make full and complete disclosure is re-examined and applied by the author of the opinion in this language [29 N.M. 633, 226 P. 422]: " * * * where there exists such trust and confidence between the parties to the transaction of *whatever character that confidence may be* as enables the person in whom such confidence is reposed to exert it or so influence the opposite person with the result that some transaction financially beneficial to the person trusted takes place, a court of equity will not allow it to stand, unless there be the fullest and fairest explanation and communication of every particular resting in the mind of such person." (Emphasis ours)

 This case recognizes, also, and applies, the principle that the mere existence of the fiduciary relation may, under many circumstances, raise a presumption that it was abused. It holds that the burden rests upon the fiduciary *to show "that the parties were dealing at arms' length, or that the transaction was fair and had in the most perfect good faith and was free from fraud."* (Emphasis ours) In this opinion we find this additional significant language: "The equitable doctrine concerning undue influence is a very broad one, and proceeds upon principles of highest morality."

The law thus sets a high standard of honesty and fairness which a fiduciary will, at his peril, ignore. The transaction in question must meet the test, not of defendant's conscience merely; not always of what she herself would believe to be fair and just, and certainly not that of caveat

emptor, which applies to the ordinary business code—not that test of dealing at arms' length. It must meet that high standard of perfect good faith, of full and complete disclosure in order that the party dealt with might know his rights, or might at least have the opportunity to know them.

We also held in the Cardenas case that the absence of consideration was enough, the grantee being in a relation of trust and confidence, to warrant an inference of undue influence. In the case at bar the matter of great influence over the minds and conduct of plaintiffs does not have to rest upon an inference. There is evidence enough to support the court's findings and conclusions as to this, without resorting to inference. Neither does this rule depend for its force upon any element of coaxing or persuasion. The Cardenas case likewise affords application of this last mentioned principle.

If defendant had established to the satisfaction of the trial court that this deed of 1908 from Cyrilla to her had actually been delivered during the lifetime of Cyrilla, and in addition, had established the fact that Cyrilla had no interest in tracts (b), (c) and (d) at the time of her death, the suit might be said to have ended there. These other questions would then become immaterial. But, the court held there was no delivery and that Cyrilla died seized of all property in question. Finding thirteen is to the effect that the deed "was not delivered to defendant during the lifetime of Cyrilla; the testimony that said instrument was so

delivered is contrary to the weight of the evidence." The trial court thus chose to believe the story, however unsatisfactory it·might appear to counsel, or to us, of the two witnesses who contradicted defendant, and perhaps even themselves, somewhat, examined in the light of the particular circumstances of the case; and that finding, therefore, concludes us.

An additional question, whether defendant does not fail because not producing corroboration of her own testimony and evidence to show delivery to her of Cyrilla's deed as required by Sec. 45-601 N.M.Stat. Ann.1929 Comp., is raised. Plaintiffs contend that this being a suit "by or against the heirs, executors, administrators or assigns of a deceased person," the statute requiring corroboration is applicable. Defendant disputed its applicability to the facts of this case and cites in support Citizens' National Bank v. Bean, 26 N.M. 203, 190 P. 1018, and Albright v. Albright, 21 N.M. 606, 157 P. 662, 663, Ann.Cas.1918E, 542. We do not consider that the question of corroboration becomes important, and so pass without deciding this point, since the trial court, in weighing defendant's testimony, has found' it to be contrary to the weight of the evidence, as we have just said.

The court made findings, contrary to defendant's contention, bearing upon all the controlling factors of the case, all elements which are essential to recovery by plaintiffs, viz.: (a) There was no consideration for the deed; (b) defendant was a fiduciary; (c) defendant failed to disclose

material facts relating to the interests, or possible interests, of plaintiffs in the property so conveyed; (d) plaintiffs, because of this failure to disclose, executed the deed in the belief they had no interest in the property; (e) and defendant gained an advantage by the transaction. Nothing more is required to justify the conclusions and judgment.

However sparingly used, that influence which comes from the trust and confidence reposed, under circumstances of this character must be exercised always at the peril of the fiduciary. The Cardenas v. Ortiz case, supra, and likewise, the general rule, support this view.`

Nor are we persuaded by the argument of able counsel for appellant when he says that in view of the considerable time which elapsed between the final submission of the case to the trial judge and his decision, when, it is urged, the judge must have forgotten much of the testimony, this court should not be controlled by the presumptions which ordinarily attach to the trial court's findings—that we are in as good position to appraise the testimony as was the trial judge at the late date he concluded with the case. Considerable time did elapse between these events, but we are not prepared to say that the learned trial judge had not been giving serious consideration to an appraisement of the testimony which he had heard, during part of such time, or that he had forgotten a substantial portion of the testimony. We see no place here for the application of any but the usual rule to be

observed in review of questions of fact upon appeal.

Finding no error, the judgment is affirmed, and it is so ordered.

BRICE, SADLER, and BICKLEY, JJ., concur.

ZINN, C. J., not participating.