468 P.2d 885

**Edward L. CARLILE, Plaintiff-Appellant,**

v.

**CONTINENTAL OIL COMPANY and X-Pert Well Service, Inc., Defendants-Appellees.**

**No. 373.**

Court of Appeals of New Mexico.

April 17, 1970.

Mack Easley, Warren Reynolds, Easley & Reynolds, Hobbs, for appellant.

Lowell Stout, Hobbs, for Continental Oil Co.

Ray C. Cowan, Girand, Cowan & Richards, Hobbs, for X-Pert Well Service, Inc.

## OPINION

SPIESS, Chief Judge.

This appeal is from a judgment dismissing plaintiff's complaint in a personal injury action. The action was brought by plaintiff, Carlile, against defendants, Continental Oil Company (Continental) and X-Pert Well Service, Inc. (X-Pert). Carlile's injuries resulted from a fire which occurred near an oil well owned by Continental. When the fire occurred Carlile, an employee of Hobbs Fishing Tools, was performing certain work relating to the well.

At the conclusion of plaintiff's case in a nonjury trial, the court sustained a motion by defendants to dismiss the action and thereafter made findings of fact and conclusions of law and entered judgment.

The appeal questions the denial of a jury demand made by Carlile, the exclusion by the trial court of certain testimony, and further, whether a number of findings of fact made by the trial court have support in the evidence.

We first consider the denial of Carlile's jury demand. The record discloses that on the day the complaint was filed Carlile filed a demand for jury trial and deposited the requisite fee with the Clerk of the Court. The demand was not served upon defendants within the time required by the applicable Rules of Civil Procedure. A motion to strike the demand was granted by the trial court and, as stated, a nonjury trial ensued.

The pertinent portions of Rule 38 [Sec. 21-1-1(38) (b) and (d), N.M.S.A.1953 (1969 Supp.)] of our Rules of Civil Procedure follow:

"(b) DEMAND. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue."

\* \* \* \* \* \*

"(d) WAIVER. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d), or to make the jury fee deposit as required, constitutes a waiver by him of trial by jury. A demand for trial by jury made as above provided may not be withdrawn without the consent of the parties."

Carlile concedes that the jury demand was not timely served, but he contends that Rule 38(d), insofar as it relates to a waiver of trial by jury, is "unconstitutional because it is in conflict with Article II, Sec. 12, of the Constitution of New Mexico." The relevant portion (Sec. 12) is:

"The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."

It is established by the weight of authority that a constitutional guaranty of the right of trial by jury does not preclude the adoption of reasonable rules of court

providing that a litigant shall not be entitled to a jury trial unless he makes demand within the time and in the manner specified by the rule. Nassif Realty Corporation v. National Fire Insurance Company of Hartford, 107 N.H. 267, 220 A.2d 748 (1966); Annot. 64 A.L.R.2d 506, 513.

The constitutional provisions considered in the decisions cited in the annotation and in *Nassif Realty Corporation* are not essentially different from the language employed in our Constitution (Article II, Sec. 12).

Carlile has directed our attention to a number of statutes which were in effect at the time the Constitution was adopted. These statutes relate to methods of demanding or waiving the right to trial by jury. He argues that Rule 38(d) is in conflict with the constitutional guaranty of the right to jury trial since none of the statutes in force at the time the Constitution was adopted employed the requirements of Rule 38(d). We think the right to trial by jury as guaranteed by the Constitution is to be distinguished from the procedure to be followed in securing the right. In our view, reasonable regulatory provisions, although different in form and substance from those in effect at the adoption of the Constitution, do not abridge, limit or modify the right which is "to remain inviolate." See Schloemer v. Uhlenhopp, 237 Iowa 279, 21 N.W.2d 457 (1946).

In our opinion, Rule 38(d) does not contravene Article II, Sec. 12, of the Constitution and is a reasonable procedural regulation.

Carlile further contends that if Rule 38 (d) is to be treated as constitutional, the court nevertheless erred in denying him a jury trial for the reason that he "did not waive his right to a jury trial because defendants had actual notice that it was filed with the court within the statutory period of limitations."

We do not decide whether the rule requiring service of a jury demand within a specified time should be disregarded where a litigant had actual notice of the demand

within the time specified by the rule for the reason that the record does not establish such actual knowledge on the part of defendants or their counsel.

It appears that after the trial court sustained a motion striking the jury demand a further motion was filed by Carlile to set aside the order striking the jury demand. Carlile attached to this motion a copy of the jury docket which listed this case. Carlile argues that because the jury docket listed the case and a call of the docket had occurred, defendants' counsel had actual notice of the demand. There is no showing by the record, nor did the trial court find, that defendants' counsel, or either of them, were present at a call of the jury docket or had notice of the fact that the case was listed upon the docket until after the time for service of the demand had expired.

Carlile further contends that the trial court erred in denying his motion under Rule 39(a) of the Rules of Civil Procedure. (§ 21–1–1(39) (a), N.M.S.A.1953).

In considering this rule the Supreme Court, in Alford v. Drum, 68 N.M. 298, 361 P.2d 451 (1961) said:

"The granting of the motion for a trial by jury was a matter within the discretion of the trial court, even though a jury had been waived pursuant to § 21–1–1(38) (d), 1953 Comp., being Rule 38 (d), our Rules of Civil Procedure."

It is clear that the trial court had a broad discretion in determining whether to grant a jury trial under the facts and circumstances in this case.

Carlile calls our attention to a number of decisions from other jurisdictions holding, in substance, that the trial court abused its discretion in not granting a jury trial after a litigant had impliedly waived the right by failure to comply with rules governing the method of effecting such right. The basis of these decisions appears to be that the opposing party would not have been prejudiced, the trial would not have been delayed, or business of the court would not

have been inconvenienced by granting the jury trial.

█ It is not shown that these conditions, or others which would have warranted granting the jury trial, were present in this case. The trial court's reasons for denying the motion are not shown by the record, nor does the record disclose what was submitted or considered by the court in ruling upon the motion. The trial court's ruling is presumed valid and the burden rested upon Carlile to show the manner in which the court abused its discretion. See Coastal Plains Oil Company v. Douglas, 69 N.M. 68, 364 P.2d 131 (1961); Wilson v. Corning Glass Works, 195 F.2d 825 (9th Cir.1952).

A summary of the facts is appropriate to an understanding of our disposition of the remaining questions presented by the appeal. Continental employed X-Pert to remove tubing from one of its wells. Hobbs Fishing Tools was employed by Continental for the purpose of clearing and eliminating possible gas in the well so that X-Pert could safely remove the tubing.

Hobbs Fishing Tools furnished a pump, certain pipes and a pump operator, Carlile. The equipment required for the work to be performed in addition to that furnished by Hobbs Fishing Tools consisted of an oil tank, including a quantity of oil, both of which were furnished by Continental; and a safety valve to be affixed to the tubing to control the discharge of oil and gas from the tubing. It is not clear to us from the record whether the valve was furnished by Continental or X-Pert.

The pump was located by Hobbs Fishing Tools in an area near the well and pipes were attached between the tank, the pump and the well to the end that oil could be pumped into the well. At this time X-Pert attached the safety valve to the tubing. Oil was then pumped into the well until it was determined that pressures had been equalized. During this process an additional quantity of oil was hauled to and placed in the tank. One of Continental's employees then directed Carlile to change his pipeline in such manner as to discharge oil into the rear of the tank. Additional pipe was required for this purpose which required the elimination of a line that fed the oil through a valve system in the pump. When this change had been completed Continental's employee instructed Carlile to circulate the well. This process involved the pumping of oil from the tank to the well and down the casing with sufficient pressure to force it up the tubing, through the return line and into rear portion of the tank.

As the oil was circulated, gas, which had formed in the well, could be dispersed into the oil and removed with it into the tank where the gas could be dispelled into the air. After Carlile had started the pump and the oil was circulating he left the pump and climbed to the top of the tank to determine the quantity of oil that was in the tank. When on the tank he heard the pipes rattle which indicated that a large quantity of gas was coming through the line and would be discharged into the tank.

At the time, Continental's employee had gone to lunch and X-Pert's employees had left the well, leaving no one to operate the safety valve. Being aware of possible danger, Carlile jumped off the tank and ran towards the pump for the purpose of stopping its operation. The gas in the meantime had reached the oil in the tank with such force that a large cloud of oil and gas was expelled from the tank covering the area, including the pump. Because Carlile was unable to stop the pump the oil and gas which was then in the air ignited resulting in the injuries to Carlile.

It is claimed that Continental was negligent in furnishing a tank without a gauge to indicate the level of fluid. This made it necessary for Carlile to leave his pump and climb upon the tank, thus putting himself in a dangerous position. Continental, it is claimed, was further negligent in filling the tank too full of fluid for safe operation; was negligent in making or directing the making of improper connec-

tions of the lines from the well to the tank and the pump; was negligent in failing to warn Carlile of the dangerous condition of the well, and the failure to have personnel at the well to operate the safety valve when and if such operation became necessary. It is claimed that X-Pert was negligent in failing to station personnel at the safety valve located at the wellhead to control the flow of oil and gas.

It is argued that each of these issues were conclusively established and contrary findings of fact made by the trial court had no evidenciary support. A question likewise is presented as to whether the trial court erred in excluding certain evidence of an impeaching nature relating to a particular witness. In our view of this appeal we do not determine whether the trial court's findings upon the issues of negligence of Continental and X-Pert are contrary to undisputed and conclusive evidence, or whether the trial court erred in excluding the impeaching evidence to which reference has been made.

We may assume a conclusive showing of negligence on the part of both Continental and X-Pert and that their negligent acts proximately caused the fire and resultant injuries to Carlile. Further, we may assume that the trial court erred in excluding the impeaching evidence.

The trial court, however, held that Carlile was guilty of contributory negligence which precluded recovery on his part. In so concluding, the trial court found:

"9. That at the time and place in question plaintiff was guilty of negligence which contributed as a proximate cause to the accident and resulting injuries, in the following particulars:

"A. At the time of the accident the plaintiff had left his pump and was on top of the tank thereby placing himself in a dangerous position and leaving his pump unattended:

"B. He had knowledge that prior to starting the circulation oil had been placed in the circulating tank and he did not check the tank to see how full it was before starting to circulate and

"C. He made no objections or requested changes of the hook-up nor did he request that a crewman be stationed at the wellhead."

■ It is undisputed that on motion to dismiss after presentation of plaintiff's case in a nonjury trial the court is not bound to give plaintiff's testimony the most favorable aspect but rather should give the testimony such weight as it is entitled to receive and as trier of the facts, is to apply its own judgment in ruling on the motion. Carrasco v. Calley, 79 N.M. 432, 444 P.2d 617 (Ct.App.1968); White v. City of Lovington, 78 N.M. 628, 435 P.2d 1010 (Ct.App.1967).

■ It is, of course, fundamental that in determining whether findings of fact of the trial court are supported by substantial evidence the evidence is to be viewed in a light most favorable to support the findings. White v. City of Lovington, supra. Carlile, however, takes the position that the findings upon which contributory negligence is based are not supported by substantial evidence. We disagree.

■ Considering Carlile's testimony as a whole, the trial court, in our opinion, could properly conclude that he had adequate experience in the performance of the work involved and knew, or should have known the essentials of safe operation. It appears from expert testimony to be undisputed that in an operation of the kind involved here it is dangerous for the pump operator to leave the pump unattended while it is in operation. The evidence is further undisputed that Carlile did leave his pump unattended while it was in operation and climbed to the top of the tank. It is established that Carlile could have asked one of X-Pert's employees to go on the tank while he stayed by the pump, or he could have asked one of these employees to stand by the pump while he went to the tank. He did neither and consequently left the pump unattended.

It is shown that had someone stayed at the pump the accident and injury could have been prevented. It is likewise shown that although Carlile knew that additional oil had been added to the tank he did not undertake to check the level of the fluid until after he had started the pump in operation.

To our mind the findings upon which contributory negligence is based are supported by substantial evidence.

In view of the conclusion we have reached we consider it unnecessary to answer other questions presented. The judgment is affirmed.

It is so ordered.

WOOD and HENDLEY, JJ., concur.