640 P.2d 489

**In the Matter of the Last Will and Testament of Hazel Cash FERRILL, Deceased,**

**Joe THORP, Appellant,**

v.

**Don CASH, Appellee.**

No. 4898.

Court of Appeals of New Mexico.

June 23, 1981.

Writ of Certiorari Quashed.

Alan Konrad, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for appellant.

Thomas L. Popejoy, Jr., Popejoy & Leach, P.C., Richard E. Ransom, Albuquerque, for appellee.

## OPINION

LOPEZ, Judge.

Joe Thorp, a legatee under the July 12, 1979, will of Hazel Cash Ferrill, appeals the judgment of the district court denying admission of this will to probate. A jury of six had found the will to be invalid as a result of undue influence exerted on the decedent by Mr. Thorp.

Eight points are raised on appeal. They fall into four broad categories as follows: 1) whether there was substantial evidence to support the judgment; 2) whether the case should have been tried to a jury, and especially a jury of six; 3) whether certain testimony should have been excluded; and 4) whether the court erred in certain jury instructions given and refused. Finding no error, we affirm the judgment of the district court.

Hazel Cash Ferrill died on December 18, 1979, at the age of 82. She suffered from cancer the last fifteen or sixteen months of her life and at various times during this period underwent various treatment for it. Joe Thorp and his wife, Billie, worked for Phillip McKee, a neighboring rancher. Beginning in May, 1979, the Thorps began to help care for Hazel and her sister, Beulah, who lived with her. Both women moved into a house on McKee's ranch for a time that spring. In part of May and June, the Thorps took care of Beulah when Hazel was in Albuquerque undergoing chemotherapy treatments, and helped Hazel when she was not in the hospital. In July 1979, while in the hospital for more treatments, Hazel executed a will disinheriting her family and leaving substantially her entire estate to the Thorps. Her grandson, Don Cash, contested the admission of the will to probate.

I. *Substantial evidence of undue influence.*

Mr. Thorp argues first that there was no evidence of undue influence and that, consequently, the court erred in refusing to grant him a directed verdict. His second argument is that, even if there was some evidence going to the contestant's claim, there was not substantial evidence to support the verdict. We condense these arguments into one and address the question of whether substantial evidence of undue influence was presented at trial. Since we conclude that there was substantial evidence on which to invalidate the will, it is clear that the judge did not err in refusing

to direct a verdict for the proponent. It is irrelevant if the judge misstated the grounds at the time of denying the motion. *See, In re Will of Skarda*, 88 N.M. 130, 537 P.2d 1392 (1975).

In considering the evidence, we are mindful that presumptions are in favor of verdicts, that we are to view the evidence in the light most favorable to the prevailing party, and that we are to disregard all inferences or evidence to the contrary. *Anaconda Co. v. Property Tax Dept.*, 94 N.M. 202, 608 P.2d 514 (Ct.App. 1979) *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. *Id.*

Undue influence has not been specifically defined in New Mexico. Our Supreme Court wrote in 1949:

We make no attempt to define "undue influence". Neither is it susceptible of any fixed formula. Whether undue influence is present is always a question to be determined from the circumstances of the particular case, and any attempt to define it may well suggest a clear path of evasion. But, undue influence in the sense as used means influence, improperly exerted, which acts to the injury of the person swayed by it or to the injury of those persons whom she would have benefitted. It is immaterial whether such influence is exercised directly or indirectly.

*Brown v. Cobb*, 53 N.M. 169, 172, 204 P.2d 264, 266 (1949). Generally, undue influence is not proven directly, but is inferred from the circumstances. *Galvan v. Miller*, 79 N.M. 540, 445 P.2d 961 (1968); *Hummer v. Betenbough*, 75 N.M. 274, 404 P.2d 110 (1965); *Calloway v. Miller*, 58 N.M. 124, 266 P.2d 365 (1954); *Trigg v. Trigg*, 37 N.M. 296, 22 P.2d 119 (1933); *Cardenas v. Ortiz*, 29 N.M. 633, 226 P. 418 (1924). A presumption of undue influence arises if there is shown to be a confidential or fiduciary relation between the primary beneficiary and the testator and if suspicious circumstances are also shown. *Hummer*; 94 C.J.S. *Wills* § 239 (1956). A confidential or fiduciary

relation exists "whenever trust and confidence is reposed by one person in the integrity and fidelity of another." 94 C.J.S. *Wills* § 230 at 1078 (1956), *quoted in Hummer*, 75 N.M. at 280, 404 P.2d at 114. Some of the circumstances which courts have found suspicious in cases where a will was contested on the grounds of undue influence are: 1) the testator is old and in a weakened physical or mental condition; *Galvan; Hummer; Ostertag v. Donovan*, 65 N.M. 6, 331 P.2d 355 (1958); *Cobb; Cardenas*; 2) there is a lack of consideration for the bequest; *Ostertag; Cobb; Salazar v. Manderfield*, 47 N.M. 64, 134 P.2d 544 (1943); *Cardenas*; 3) the disposition of the property is unnatural or unjust; *see, Hummer; see, generally, Galvan; Ostertag*; 4) the beneficiary participated in procuring the will; *Galvan; Hummer*; and 5) the beneficiary dominated the testator. *Galvan*.

Having examined the evidence in the light most favorable to appellee, we find there is substantial evidence of a confidential relation between Joe Thorp and Hazel Cash. The evidence is uncontradicted that Hazel trusted Joe and thought very highly of him. This relation of trust began in the late spring of 1979 and continued until Hazel's death in December of that year. As the relation progressed, Hazel turned the handling of her affairs more and more over to Joe Thorp, and, in November, she signed a power of attorney in his favor. We do not agree with Thorp that there is no evidence that this confidential relation existed on July 12, 1979, the day the will was signed. Hazel and her sister, Beulah, resided at the McKee ranch during part of May and June, 1979, where the Thorps devoted much time and attention to them. The jury could reasonably infer that the confidential relation began at this time. Moreover, Hazel asked that Joe be present when she signed the will, a further indication that, by that time, she trusted him concerning her most important affairs.

There is also substantial evidence of several suspicious circumstances which, together with the existence of the confiden-

tial relation, would give rise to a presumption of undue influence. 1) Hazel was old and sick. She was 82 when she died. The last year of her life, during the time she became attached to Joe Thorp, she was suffering from cancer. In the spring of 1979, she began chemotherapy treatments. By May 1979, her condition was detriorating; she suffered from pain, and lack of oxygen, was weak, irritable, and needed help in caring for Beulah and the ranch. Dr. McCullough, a psychiatrist, gave his opinion that Hazel would have been susceptible to undue influence at the time the will was signed due to her physical and mental condition. 2) The evidence indicated that the value of the ranch left by Hazel to the Thorps was between $875,000.00 and $1,000,000.00. Although they were a great help to her in the last months of her life, they were being paid at that time by Phillip McKee who had asked them to help Hazel. The jury could have found there was inadequate consideration for Hazel's bequest. 3) Don Cash, Hazel's grandson, was raised by Hazel as a son. During his childhood, he helped her by working in the bars she ran, working in her nursing home, and at the ranch. In October and November of 1978, she and her sister lived with Don and Marie, his wife. During this time, Marie drove her to Albuquerque for daily radiation treatments. In a will Hazel made in September 1978, before she became acquainted with the Thorps, she left most of her estate to Don. From the evidence, the jury could have concluded that the disposition of the will was unnatural or unjust. 4) Joe Thorp's presence at Hazel's bedside when she signed the will is not in itself a suspicious circumstance. In listing suspicious circumstance, C.J.S. states:

"[N]o presumption of undue influence will be raised where the activity of the beneficiary in the * * * execution of the will was in compliance with the request of the testator."

94 C.J.S. *Wills* § 239 at 1096 (1956). The evidence indicates that Joe was present because Hazel asked that he be there. While by itself, his presence at the execution of the will would not be sufficient to raise a presumption of undue influence, it is further evidence that Hazel trusted him and that the confidential relation between the two was established by the time the will was signed. 5) While there is no direct evidence that Joe dominated Hazel by July 1979, such evidence is not crucial.

Citing *Galvan*, Thorp claims there must be a showing of strong dominance by the beneficiary at the time of the execution of the will. We do not think *Galvan* stands for this proposition. Such an interpretation does not harmonize with other cases on undue influence which have been decided in New Mexico. Cf. *Hummer; Ostertag; Calloway; Cobb; Salazar; Trigg; Cardenas.* A showing of dominance is just *one* of the possible circumstances which, together with a confidential relation, gives rise to a presumption of undue influence.

A presumption of undue influence will arise if it is shown that, in addition to the confidential or fiduciary relation, the testator was dominated, or controlled by the beneficiary, *or* that the testator was weak-minded or in frail health and particularly susceptible to influence, *or* that the provisions of the will are unnatural and unjust, *or* that the person designated as a recipient of benefits thereunder unduly profited by the will. (Emphasis added.)

94 C.J.S. *Wills* § 239 *supra* at 1096–98, *quoted in, Hummer*, 75 N.M. at 280–81, 404 P.2d at 115. In *Cobb*, the court wrote:

In order to render [the rule on undue influence] * * * applicable, it is not necessary that one of the parties should occupy such a dominant position towards the other as to justify the inference that the latter was without power to assert his will in opposition to the former.

*Id.* 53 N.M. at 172, 204 P.2d at 266. Undue influence was found to have been exerted by the weaker or less dominant party in *Trigg.* Nor do *Walters v. Walters*, 26 N.M. 22, 188 P. 1105 (1920) and *Giovannini v. Turrietta*, 76 N.M. 344, 414 P.2d 855 (1966), cited in *Galvan*, belie the view that a showing of dominance along with a confidential relation is sufficient, but not necessary, to

establish undue influence. *Walters* stands for the proposition that a presumption of undue influence arises when a confidential relation exists and the grantee dominates the grantor; but it does not hold that the presumption arises only when there is a direct showing of dominance. In *Giovannini*, the court asserts that a confidential relationship, by itself, is not sufficient to raise a presumption of undue influence. While the court adds that dominance also must be shown, nowhere does it imply that this dominance cannot be inferred from the circumstances. Moreover, the dominance requirement is derived from *Cardenas*, a case in which there was no more direct evidence of undue influence than in the case before us. In *Cardenas*, Judge Bratton specifically noted with respect to one donor, the wife, that there was no evidence of direct persuasion, but that other circumstances—such as her physical and mental condition and lack of consideration—were sufficient to establish undue influence. Moreover, the court in *Giovannini* did not read *Cardenas* in the same way that an earlier court did. In *Salazar*, decided before *Giovannini*, the court read *Cardenas* as holding that the absence of consideration coupled with the existence of a confidential relation was sufficient to raise an inference of undue influence. We do not imply that *Giovannini* misinterpreted *Cardenas*. Our view is that neither *Giovannini* nor *Galvan*, which followed it, limited undue influence to those situations where dominance could be directly shown. Rather, dominance by the grantee, when susceptible of direct proof, is merely one factor which raises a presumption that the grantor was unduly influenced, when there is also evidence of a confidential relation between the parties. Thorp's view that direct evidence of dominance by the legatee over the testatrix is necessary in order to show undue influence is incorrect.

■ There is substantial evidence to raise a presumption that Joe Thorp unduly influenced Hazel Cash to make him and his wife the principal beneficiaries of her will. Although evidence was presented which suggested that the will was not the result of undue influence, it is for the fact finder to determine the weight of the evidence and judge the credibility of the witnesses, *Galvan*. The jury could decide that the presumption was not rebutted.

■ Thorp's argument that Hazel's failure to revoke the will somehow vitiated the effect of undue influence is without merit. The evidence was uncontradicted that his close relation with Hazel continued until her death. As she trusted him, her failure to revoke the will was simply to be expected, and was no indication that she had not been unduly influenced by him.

II. *Jury Trial.*

■ *Court's discretion to order jury trial.* Thorp argues first that the district court had no power to order a jury trial on its own motion. Although Don Cash filed an objection to probate on February 15, 1980, he made no demand for a jury trial until April 11, 1980. A jury demand in civil actions is to be made not later than 10 days after service of the last pleading on the issue concerning which trial by jury is sought. N.M.R.Civ.P. 38(a), N.M.S.A.1978 (Rep.1980). The contestant's jury demand was untimely, and the court ordered a jury trial on its own motion. Under N.M.R. Civ.P. 39(a), N.M.S.A.1978 (Rep.1980), the court has the discretion to do this when the demand for a jury trial might have been made of right. The question, then, is whether one is entitled to demand a jury trial of right when contesting a will. Thorp uses two cases, *State ex rel Gallegos*, 40 N.M. 331, 59 P.2d 893 (1936) and *Frock v. Fowlie*, 80 N.M. 506, 458 P.2d 581 (1969) as support for his contention that probate proceedings are in equity and, consequently, a claimant has no right to a jury trial. *Frock* is not on point; and *Gallegos* rests on an interpretation of an old law, § 34–422, N.M. S.A. (1929), which is no longer in effect. The current probate code, §§ 45–1–101 to 45–1–404, N.M.S.A.1979, enacted in 1975, allows a jury trial in certain probate proceedings. Section 45–1–306 provides:

If demanded, in the manner provided by the Rules of Civil Procedure, a party is entitled to a trial by jury in a formal testacy proceeding and in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury.

The pertinent Rule of Civil Procedure is Rule 38, entitled "Jury trial in civil actions", which provides in part that:

(a) * * * In civil actions any party may demand a trial by jury *of any issue triable of right by a jury* * * *. (Emphasis added.)

Under Rule 38(a), a demand for a jury trial may be made when there is a right to one; and when the demand is timely, the court cannot refuse to allow a jury trial. *See, Barber's Super Markets, Inc., v. Stryker,* 84 N.M. 181, 500 P.2d 1304 (Ct.App.), *cert. denied,* 84 N.M. 180, 500 P.2d 1303 (1972). Rule 39(a) gives the court the discretion to allow a jury trial when the right to one exists, and the demand was not timely. *Alford v. Drum,* 68 N.M. 298, 361 P.2d 451 (1961); 9 Wright and Miller, Federal Practice and Procedure ¶ 2334 (1971) (discussion of Fed.R.Civ.P. 39(b) which is similar to our Rule 39(a)). Section 45–1–306 of the Probate Code simply means that the court cannot refuse a jury trial to a party in a formal testacy proceeding who demands it in accordance with Rule 38(a). If the demand is not timely, Rule 39(a) is applicable. The district court did not err in ordering a jury trial.

▀▀▀▀ *Waiver of right to jury of twelve.* Thorp's second objection to the jury is that it consisted of six members rather than twelve. Unless specific demand is made for a jury of twelve, the parties are considered to have agreed to a jury of six. N.M.R.Civ.P. 38(b) N.M.S.A. 1978 (Rep.1980). The right to a jury of twelve is waived if the demand for it is not made within ten days after the other party has demanded a jury trial. *See, Id.* Cash demanded a jury trial on April 11, 1980. Thorp did not demand a jury of twelve until the first day of trial, August 18, 1980. His failure to act within the time limit of

Rule 38(b) constituted a waiver of his right to the larger jury.

III. *Allowance of Testimony.*

*MacKenzie's testimony.* Thorp objected to Howard MacKenzie's testimony about the negotiations he had with Thorp, Hazel, and a third man, Mossman, concerning a mining lease which would enable MacKenzie to mine on Hazel's land. The discussions took place between June and December, 1979. By November, working through Thorp and Mossman, MacKenzie thought he had reached an agreement on the terms of the lease between himself and Hazel. When he visited Hazel in the hospital around December 10, he learned from Thorp that Hazel had already signed a mining lease with Thorp and Mossman. In testifying at trial, MacKenzie indicated his surprise at learning about this agreement and his belief that Thorp had tricked Hazel with this lease. He also testified, however, that when he went in to see Hazel, she confirmed what Thorp had said and assured him that Thorp and Mossman would not cheat him.

Thorp objected to this testimony as irrelevant and prejudicial. N.M.R.Evid. 402, N.M.S.A.1978 prohibits evidence which is not relevant; and N.M.R.Evid. 403, N.M.S.A.1978, allows relevant evidence to be excluded in certain circumstances when it is prejudicial.

▀▀▀▀ We find MacKenzie's testimony was relevant. The New York courts, when examining a will challenged on the grounds of undue influence, normally allow evidence covering a period of three years prior to and two years after the execution of the will, if it concerns the relationship between the testator and the proponent of the will. *In re McNamara's Will,* 148 N.Y.S.2d 544 (1956). Evidence indicative of comments by the testator concerning persons slighted in the will or concerning persons accused of exerting undue influence is admissible, even when the comments were made after the will was executed. *See, Shulman v. Shulman,* 150 Conn. 651, 193 A.2d 525 (1963); *In re Thompson's Will,* 248 N.C. 588, 104

S.E.2d 280 (1958). Neither is there error in admitting evidence of business arrangements and financial transactions between the testator and the proponent of the will which occurred after the will was executed. *Wilhoit v. Fite,* 341 S.W.2d 806 (Mo.1960). Evidence that sheds light on the relationship between the testatrix and a primary beneficiary of the will is relevant in determining the existence of undue influence, even when the evidence pertains to events taking place after the will was executed. MacKenzie's testimony was relevant because it pertained to the ongoing relationship between Thorp and Hazel.

Relevant evidence may be excluded if the danger of prejudice substantially outweighs its probative value. N.M.R.Evid. 403. Although MacKenzie's testimony might have been prejudicial in that he indicated that he thought Thorp had deceived Hazel, its probative value was significant, as it informed the jury of the extent to which Hazel trusted Thorp up to the time of her death. The admission or exclusion of evidence is within the discretion of the trial court, and the court's determination will not be disturbed in the absence of a clear abuse of that discretion. *State v. Valdez,* 83 N.M. 632, 495 P.2d 1079 (Ct.App.), *aff'd,* 83 N.M. 720, 497 P.2d 231, *cert. denied,* 409 U.S. 1077, 93 S.Ct. 694, 34 L.Ed.2d 666 (1972). The trial court did not err in admitting MacKenzie's testimony.

*McKee's testimony.* Thorp also objected to the admission of some of Phillip McKee's testimony. McKee had hired the Thorps to work on his ranch, and it was at his suggestion that they helped Hazel. While originally McKee had held a high opinion of the Thorps, his opinion had changed by January 1980. At trial, he testified that the reasons for this change were that he did not think that Joe was properly performing his part of the employment agreement and that he suspected that Joe was interfering in his, McKee's, relationship with his children. McKee's opinion of Thorp was heard by the jury. When character evidence is admissible, testimony in the form of an opinion as to that character is proper. N.M.R.Evid. 405(a), N.M.S.A.1978. We must decide if character evidence, such as offered here, is admissible when a will is contested on the grounds of undue influence.

Character evidence is not generally admissible to prove conduct. N.M.R. Evid. 404(a), N.M.S.A.1978. However, Rule 404 does not bar character evidence when character is an element of the claim. *See, State v. Bazan,* 90 N.M. 209, 561 P.2d 482 (Ct.App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977). In some states, the disposition to exert undue influence is one of the elements of undue influence. 1 Page on Wills § 15.5 (1960). This is not the case, however, in New Mexico. *See generally, Cobb.* Nevertheless, evidence of the character of the beneficiary may be admitted when a will is contested on the grounds of undue influence even when the disposition to exert undue influence is not considered an element of the claim. *See, In re Olsson's Estate,* 344 S.W.2d 171 (Tex.Civ.App.1961).

Evidence which tends to show the character of the beneficiaries, heirs, and the like, is admissible if it tends to prove or disprove the existence of undue influence. 3 Page on Wills § 29.129 (1961). Such evidence may concern actions occurring, or reputation formed, after the will was executed. *See, In re Ford's Estate,* 19 Wis.2d 436, 120 N.W.2d 647 (1963); *see generally, Bryan v. Norton,* 245 Ga. 347, 265 S.E.2d 282 (1980); *Welch v. Barnett,* 34 Okl. 166, 125 P. 472 (1912). According to Weinstein, Rule 404 does not prohibit the use of character evidence in civil actions where character is in issue. 2 Weinstein, Evidence ¶ 404[03] (1980). Although discussing Federal Rule of Evidence 404, the comment may be applied to our rule which is similar. Adopting the view expressed in *Page,* above, we hold that evidence which shows the character of a primary beneficiary of a will contested on the grounds of undue influence is admissible if that evidence tends to prove or disprove the existence of undue influence. McKee's testimony suggested that Thorp might have a disposition to exert undue influence and was properly admitted. While the opinion testified to was

not formed until some months after the will was executed, the time was still close enough to the execution of the will for the opinion to be relevant.

The case cited by Thorp, *In re Will of Callaway*, 84 N.M. 125, 500 P.2d 410 (1972), is not on point. It does not consider the issue of whether evidence of character is admissible to prove undue influence. In that case, the submission to the jury of hospital records containing nurses notes was error because the nurses could not be cross-examined, not because the records contained opinions *per se*. McKee was available for cross-examination. The court did not err in admitting his testimony.

IV. *Jury Instructions.*

█ *Instructions on burden of proof.* Thorp's claims first that the giving of Instruction 18 by the court was error. That instruction reads:

It is a general rule in all civil cases that a party making a claim has the burden of proving the propositions necessary to support his claim by the greater weight of the evidence or, as it [is] sometimes called, the preponderance of the evidence.

Evenly balanced evidence is not sufficient.

Therefore, when I say in these instructions that a party has the burden of proof on any proposition or use the expression "if you find", or "if you decide", I mean that you must be persuaded, considering all the evidence in the case, that the proposition on which one has the burden of proof is probably more true than not true.

For a Will to be invalid on the ground of undue influence, the evidence of undue influence, although it may be wholly circumstantial, must be clear and convincing. For evidence to be clear and convincing, it must tilt the scales in the affirmative when weighed against the evidence in opposition and leave your mind with a conviction that such evidence is true.

The first three paragraphs of this instruction comprise N.M.U.J.I. 3.6, N.M.S.A.1978.

The directions for use of U.J.I. 3.6 say that the instruction is to be given in every civil case. Rule 51(D), N.M.R.Civ.P., N.M.S.A. 1978 (Rep.1980) instructs that, normally, applicable Uniform Jury Instructions approved by our Supreme Court should be used. U.J.I. 3.6 is such an instruction. The Rules of Civil Procedure apply to formal proceedings under the Probate Code. § 45-1-304, N.M.S.A.1978. U.J.I. 3.6 is properly given in district court cases arising under the Probate Code.

█ While Thorp is correct in asserting that proof of undue influence must be by clear and convincing evidence, *McElhinney v. Kelly*, 67 N.M. 399, 356 P.2d 113 (1960), he is incorrect in believing that U.J.I. 3.6 should not be used when such proof is required. This court has already decided that U.J.I. 3.6 is proper in a fraud case, when an instruction is also given that the evidence must be clear and convincing. *Echols v. N.C. Ribble Co.*, 85 N.M. 240, 511 P.2d 566 (Ct.App.), *cert. denied*, 85 N.M. 229, 511 P.2d 555 (1973). The same rule applies in the instant case. By use of the fourth paragraph in Instruction 18 containing the requirement that the evidence be clear and convincing, the court complied with the rule.

█ Thorp argues that the portion of Instruction 18 defining clear and convincing evidence is incorrect because the word "instantly" is not included before the phrase "tilt the scales in the affirmative". *Cf.*, *Hockett v. Winks*, 82 N.M. 597, 485 P.2d 353 (1971) (defining clear and convincing evidence). We are not persuaded that the word "instantly" is essential in the definition of "clear and convincing evidence". Moreover, there is no reason to believe that the error, if there was one, affected the verdict.

[A] judgment will not be reversed by reason of an erroneous instruction, unless * * * the evidence indicates that without such error in the instructions the verdict probably would have been different from the verdict actually returned by the jury. (Cites omitted.)

*Romero v. Melbourne,* 90 N.M. 169, 173, 561 P.2d 31, 35 (Ct.App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977) Hernandez, J., specially concurring). The giving of Instruction 18 is not grounds for reversal of the judgment.

 *Failure to give requested instruction on undue influence.* Thorp claims next that the failure to give his Instruction 25 was error. That instruction reads:

There must be more than mere suspicion of undue influence to vitiate a will or to deny it probate. To deny a will probate because of undue influence, there must be such influence exercised at the time the will is made, as to destroy the will of the testatrix and cause her to do what she would not have done of her own free choice.

The denial of a requested instruction is not error when the court gives an instruction that adequately covers the issue. *Tapia v. Panhandle Steel Erectors Co.,* 78 N.M. 86, 428 P.2d 625 (1967). The instructions given are sufficient if, when read together, they fairly present the applicable law. *Id.* Instead of the requested instruction, the court gave Instructions 13 and 17 which read:

13. Undue influence is improper. Influence alone, however, is not improper.

The term "undue influence" means that one unfairly and improperly influenced another as to prevent that person from exercising a free and understanding judgment.

17. Undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it was made.

These instructions, read together, contain the essential law found in proponent's proposed Instruction 25. Since the given instructions fairly present the law, the court's failure to give proponents Instruction 25 was not in error.

 In his reply brief, Thorp suggests that the court erred in giving Instruction 13 above. This argument was not raised in the Brief-in-Chief, nor does the record indicate that Thorp objected to the instruction at trial. Jury instructions are reviewable when the error is properly preserved. N.M. R.Civ.P. 51(J), N.M.S.A.1978. Thorp failed to preserve any error related to Instruction 13. We will not consider this issue.

 *Failure to give requested instruction on dominance.* Thorp's last claim is that the court erred in failing to give his Instruction 28, requiring the jury to find that the Thorps dominated Hazel. The instruction was written:

For there to be a presumption of undue influence, the mere relationship of the parties is not enough; there must be a showing of strong dominance by the person procuring the will over the testatrix.

As already stated in Part I of this opinion, Thorp's view on the showing of dominance necessary to prove undue influence is incorrect. Instead of Thorp's instruction, the court gave its Instruction 16, the second paragraph of which was similar to 94 C.J.S. § 239 quoted with approval earlier in this opinion. We have already indicated that a direct showing of dominance is merely one of the factors which may give rise to a presumption of undue influence when a confidential relation exists between the testator and the primary beneficiary. Thorp's instruction, by emphasizing one factor to the exclusion of all others, distorts the law. The court did not err in refusing this instruction.

The judgment of the trial court is affirmed. Appeal costs are to be paid by the appellant.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

WALTERS, J., dissenting.

SUTIN, Judge (specially concurring).

I specially concur.

## INTRODUCTION

Thorp, in the Statement of Proceedings, set forth about 14 pages of facts, primarily those which favor Thorp in this appeal. It has been stated innumerable times that, at the trial court level, the burden of proof is

394

on plaintiff to establish a case. If successful, and defendant appeals, facts are to be viewed in an aspect most favorable to plaintiff, together with all reasonable inferences in support of the verdict, disregarding all inferences and evidence to the contrary. Invariably, an appellant violates this rule. Psychologically, this violation may sway the mind or conscience of those who sit in judgment. After reading the facts most favorable to Thorp, one would not hesitate to reverse the judgment. When casting these facts out, one will affirm the judgment.

This is a substantial evidence case. "It must be kept in mind that plaintiff is fortified by the jury verdict and the judgment of the trial court—thus occupies the most favorable position known to the law." The manner in which the jury discharged its functions is to us an unknowable. Appellate courts should be slow to impute to juries a disregard of their duties and to trial courts a want of diligence and perspicacity in appraising the jury's conduct. Neither should we look with antagonistic eyes at the record which favors the prevailing party, nor fly speck in our examination. To do so, judges become "verdictators." It is hornbook law that the judgment of the trial court will be upheld if it is right for any reason.

In borderline cases, the verdict of the jury is controlling. It will not be set aside due to error that does not affect the result if the result would most likely be the same or if the result is just and fair. The conscience of the reviewing court should be a decisive factor in the determination of affirmance or reversal. The biblical command: "Justice, Justice shall thou pursue" is the guiding light. If the case has been fairly tried and the verdict-judgment appears to be right, the judgment should be affirmed. If unfair and serious error appears that affects the jury verdict to the extent that it appears to be wrong, the judgment should be reversed. Claimed error must be plain, obvious, sharp, unmistakable, apparent and manifest.

We must perceive this case with the retina, not with an optical illusion. Justice must not appear at the scene with her eyes bandaged, and emotional resurgence should not impel a reversal at the loss of a case below. If Thorp had one fair trial, he is not entitled to a second bite of the apple or a fourth strike in the ballgame. The trial judge must bear the entire responsibility for a fair trial, fairly recorded in a most difficult and complex factual situation and should not remain mute and inscrutable as a sphinx. The trial judge met the challenge.

Having considered these manifold reasons and purposes, I specially concur.

Judge Walters would reverse on the ground that inadmissible evidence of two witnesses was admitted and that the trial court was without authority to order a jury trial on its own motion. This challenge will be answered first.

### A. *The district court properly granted Don Cash a jury trial.*

Judges Lopez and Walters differ on the right of a trial court to try this case to a jury "on its own motion." I side with Judge Lopez.

The pertinent facts are:

On January 11, 1980, a petition was filed for formal probate of the Will of Hazel Cash Ferrill. Notice was given of a hearing to be held on February 15, 1980. On that date, Don Cash, grandson of Hazel, filed objections to probate of the Will. The hearing was vacated until further notice. For various reasons, demand for jury trial by a six person jury was belatedly filed on April 8, 1980. On April 22, 1980, Thorp filed a motion to strike the jury demand because it was not timely filed in accordance with *Rule 38* of the Rules of Civil Procedure. No ruling was made on this motion.

On June 26, 1980, a hearing was held. After denying a motion to disqualify the judge, the court said:

> However, I will try it by a six-man jury. The trier of fact should be impartial, and that should resolve that problem * * *. [Emphasis added.]

The hearing on objections was set for August 18th. At this hearing, when questioned on the jury trial, the court said:

*The request for jury trial will be allowed* \* \* \* \* [Emphasis added.]

*The court requested Thorp to prepare an Order.* On August 15, 1980, an Order was filed, the last paragraph of which reads:

The Court, *on its own motion*, orders that the matters at issue upon the Petition for Formal Probate of the Last Will and Testament of Hazel Cash Ferrill, deceased, and the Objections thereto heretofore filed by Don Cash, be tried to a jury of six (6). [Emphasis added.]

Thorp now claims that "The trial court erred in trying this case to a jury 'on its own motion.'" This claim is frivolous. 60 C.J.S. Motions and Orders, § 1 (1969) defines a motion as follows:

A motion may be defined as an application for an order directing that some act be done in favor of the applicant.

56 Am.Jur.2d Motions, Rules, and Orders, § 1 (1971).

The district court cannot be an applicant who makes a "motion" to itself to be decided by and for itself. It could not have acted "on its own motion." The words in the Order, "on its own motion" are meaningless. By deleting these words, the Order accurately states the action taken by the court. In pertinent part it reads:

The Court \* \* \* orders that the matters at issue \* \* \* be tried to a jury of six (6).

This Order was based upon Don Cash's demand for jury trial under Rule 38. Now, in the appeal, Thorp seeks to change the word "motion" to "initiative" in order to switch from Rule 38 to Rule 39(a). Under Rule 39(a), the trial court may not "on its own initiative" grant a jury trial if neither side has requested that form of trial. The pertinent part of Rule 39(a) reads:

[N]otwithstanding the failure of a party to demand a jury in an action in which such a demand *might* have been made of right, the court in its discretion *upon motion* may order a trial by a jury of any or all issues. [Emphasis added.]

From the record, we know as a fact that Don Cash did demand a jury in this action under Rule 38. No motion was filed by Don Cash under Rule 39(a) to allow the court to exercise its discretion and order a trial by jury. Rule 39(a) is not applicable.

The Order entered was based upon Don Cash's demand for a jury trial under Rule 38. The only attack made by Thorp was a "Motion to Strike Jury Demand" "for the reason that it was not timely filed in accordance with Rule 38 of the Rules of Civil Procedure \* \* \*." This motion was not ruled upon by the Court.

What is the effect of the failure of a district court to rule upon a motion?

"The burden is on the party making a motion to obtain a ruling from the court and failure to do so constitutes a waiver of the motion precluding its consideration on appeal." *Rea v. Ruff*, 580 S.W.2d 471, 472 (Ark.1979). It has been held that a motion not ruled upon is denied by operation of law. *Atchison, Topeka and Santa Fe Railway Co. v. Parr*, 96 Ariz. 13, 391 P.2d 575 (1964); *McElwain v. Schuckert*, 13 Ariz. App. 468, 477 P.2d 754 (1971). This rule was not followed in *Jones v. Suhre*, 345 A.2d 515, 517–518, Note 5 (Me.1975). The court said:

Generally, a party is entitled to a ruling on a motion. 60 C.J.S. Motions and Orders, § 38. However, either failure on the part of the moving party to proceed with a motion or action by that party in a manner inconsistent with the object of the motion prior to determination of the motion may constitute waiver or abandonment of the motion. 60 C.J.S. Motions and Orders § 42. [Id. 517–518.]

*Veterans Trav. Club of W. Ill. U. v. Illinois Com. Com'n*, 15 Ill.App.3d 116, 303 N.E.2d 142 (1973) denied an intervenor the status to pursue an appeal when a request to intervene was never ruled upon. The court said:

\* \* \* The failure to make a ruling on a motion is not the equivalent of the denial of a motion. [Id. 303 N.E.2d 145.]

However, where an order is entered which is inconsistent with granting the relief sought, there is a denial of the motion. *Lutz v. Goldblatt Brothers, Inc.,* 225 N.E.2d 843 (Ind.App.1967).

The failure to rule upon a motion has various nuances which courts use to satisfy the desired result. In the instant case, inasmuch as Thorp failed to proceed to seek a determination of the motion, but proceeded to trial by jury, this conduct constituted waiver or abandonment of the motion to strike the jury demand precluding its consideration in this appeal.

Legal prejudice was not visited on Thorp because he had to try his case to a jury rather than the court. *Hoffmann v. Alside, Inc.,* 596 F.2d 822 (8th Cir. 1979). Throughout these proceedings, the trial court has been fair and impartial. When the affidavit of disqualification was denied, the trial court could have usurped the power to decide the issues. Instead, the court stated that the jury, "The trier of the fact should be impartial, and that should resolve the problem."

The trial court properly granted Don Cash a jury trial.

**B.** *If Rule 39(a) were applicable, the trial court properly exercised its discretion.*

Mistakenly, the parties proceeded in this appeal under Rule 39(a) of the Rules of Civil Procedure set forth *supra.*

Thorp says that "the sole issue on this point is whether the trial court had the discretion to order the case tried to a jury * * *." If, per chance, this were the sole issue, which it is not, the trial court properly exercised its discretion.

Section 45–1–306, N.M.S.A.1978 of the Probate Code reads:

If demanded, in the manner provided by the Rules of Civil Procedure, a party is entitled to a trial by jury in a formal testacy proceeding and in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury.

Each method known to allow the right to trial by jury was preserved in the Probate Code. Section 45–1–102(A) says:

The Probate Code *shall be liberally construed and applied* to promote its underlying purposes and policies. [Emphasis added.]

Unfortunately, "shall be liberally construed and applied," a mandatory provision, was not defined. These words take on various shades of meaning. See, *Albuquerque Hilton Inn v. Haley,* 90 N.M. 510, 565 P.2d 1027 (1977); *Mann v. Gordon,* 15 N.M. 652, 110 P. 1043 (1910); 25 Words and Phrases, "Liberal Construction," p. 173 (1961). To give substance to the phrase, it means to generously ascertain, or expand, the language in the provisions of the code by a process of arrangement and inference to accomplish the underlying purposes and policies of the Probate Code. Where the provisions of the code are remedial in nature, the language should be construed so as to suppress the mischief and advance the remedy.

Section 45–1–306 on "Jury trial" is remedial because it cures the defects in the old probate code. Section 30–2–11, N.M.S.A. 1941 provided that after an appeal is taken from the probate judge to the district court, "The matter shall then stand for hearing de novo in the district court the same as on appeal, but either party, on demand therefor, shall have the right to a trial by jury on such appeal . . . ."

It was upon this old statute that the cases relied upon by Thorp were written. *Frock v. Fowlie,* 80 N.M. 506, 458 P.2d 581 (1969); *State v. District Court, Ninth Judicial Dist.,* 40 N.M. 331, 59 P.2d 893 (1936) and *Sheley v. Shafer,* 35 N.M. 358, 298 P. 942 (1931). Since 1975, trial by jury under the Probate Code is governed by the Rules of Civil Procedure.

Under Rule 39(a) "It is clear that the trial court had a broad discretion in determining whether to grant a jury trial under the facts and circumstances in this case." *Carlile v. Continental Oil Company,* 81 N.M. 484, 486, 468 P.2d 885 (Ct.App.1970); *Alford v. Drum,* 68 N.M. 298, 361 P.2d 451 (1961). "[A] court may, in its discretion, grant a

belated motion for a jury trial under Fed.R. Civ.P. 39(b) [same as N.M. 39(a)]." *Cox v. C. H. Masland & Sons, Inc.*, 607 F.2d 138, 144 (5th Cir. 1979); *Fontainebleau Hotel Corp. v. Goddard*, 177 So.2d 555 (Fla.App. 1965); *Gechijian v. Richmond Ins. Co.*, 305 Mass. 132, 25 N.E.2d 191 (1940). For an estate case, see, *Kelley v. First State Bank of Princeton*, 81 Ill.App.3d 402, 36 Ill.Dec. 566, 401 N.E.2d 247 (1980). Whenever a doubt exists, such doubt should be resolved in favor of according a litigant a trial by jury. The failure of the court to grant such relief is prejudicial error. *Bishop v. Anderson*, 101 Cal.App.3d 821, 161 Cal.Rptr. 884 (1980).

Almost every case on this subject matter involves the denial of a demand for jury trial when a timely request has not been made. It is rare to discover any opinion in which an abuse of discretion was found. In every case wherein a party sought to escape the trial court and be heard by a jury, the denial of a jury trial never constituted an abuse of discretion. *Duffy v. Mollo*, 400 A.2d 263 (R.I.1979); *Roberts v. Duddles*, 47 Mich.App. 601, 209 N.W.2d 720 (1973); *Tri-State Insurance Company v. Busby*, 253 Ark. 655, 488 S.W.2d 1 (1973); *People ex rel. Bucaro v. Johnson*, 8 Ill.App.3d 618, 291 N.E.2d 9 (1972); *Shriner v. Simmons*, 483 S.W.2d 324 (Tex.Civ.App.1972); *Balise v. Underwood*, 71 Wash.2d 331, 428 P.2d 573 (1967); *Horton v. Montgomery Ward*, 199 Kan. 245, 428 P.2d 774 (1967); *International U., U.A., A. & A.I.W. v. American M.P. Co.*, 56 Tenn.App. 526, 408 S.W.2d 682 (1965).

Inasmuch as trial by jury is a constitutional and statutory right, there is no reason to believe that in each of these cases, if the trial court had granted a belated demand for jury trial, no abuse of discretion would have been found. "The right to jury trial is so jealously regarded by our courts that parties may not be deprived of it by a rigid construction of a procedural rule. Rules or statutes limiting the time for filing a demand for jury trial, although mandatory in terms, are not always so regarded. It is the rule in this and in other jurisdictions that where the opposing party is not prejudiced, the court, in its discretion, may waive

the delay and its refusal to enforce the time limitation is not reversible error...." *Daly v. Scala*, 39 A.2d 478, 479 (D.C.Mun. App.1944); *Stephens v. Kasten*, 383 Ill. 127, 48 N.E.2d 508 (1943); *Tilton v. Sharp*, 52 S.W.2d 289 (Tex.Civ.App.1932); *City of Jackson v. Clark*, 152 Miss. 731, 118 So. 350 (1928).

Under Rule 39(a), if applicable, the trial court properly granted Don Cash a jury trial.

## C. *Testimony of McKenzie and McKee was properly admitted.*

Judges Lopez and Walters disagree on the admission of testimony of Howard McKenzie concerning events which took place in the winter of 1979, and the testimony of Phillip McKee concerning his "opinion of the Thorps as of December 1979." I side with Judge Lopez.

### (1) *McKenzie*

Thorp objects to one sentence in McKenzie's testimony around December 10, 1979, about a week before Hazel Cash Ferrill died in the hospital. It involved a conversation between Thorp and McKenzie in which McKenzie said:

> If Fred Mossman thought he could do better up there, his shovel was as big as mine and to go right ahead, but I also said as far as Hazel Cash is concerned, I will play your game, I will not tell her about this because I know she was very ill.

No objection was made to this testimony. Objections had been made prior thereto. Out of the presence of the jury the last communication between the court and Thorp's lawyer was as follows:

> COURT: I understand that you[r] objection, if you wish it, you should be able to prevail, but I do not see that it is that unduly prejudicial, because it cuts both ways. *I will allow the line to be pursued subject to subsequent motions.*

> MR. MONTEZ: It was clear from Mr. McKenzie's testimony that Mr. Aguayo was mistaken in his time frame of the

meetings. It does not seem to jive, to be the same, and I think

COURT: That is something that can be addressed on cross examination.

Thereafter, McKenzie testified at length to the end of his direct examination without any objections or motions made. The testimony was properly admitted in evidence. I note in passing that Cash offered this whole line of testimony for two purposes: One, to show the relationship of trust and confidence between Hazel Cash Ferrill and Thorp, and secondly, matters ancillary to that. This relationship being an important issue, McKenzie's testimony was relevant.

### (2) McKee

Mr. McKee, over Thorp's objection, was permitted to testify as to the change in his opinion of Thorp in December 1979. A "storm in a teacup" occurred at the bench between the court and Montez, Thorp's lawyer, over the right of McKee to testify to this fact. Later, it was learned that the microphone had not been turned off and the jury heard the "tempest in the teapot." Montez requested the court to advise the jury to disregard all that occurred at the bench conference. The court did in good fashion.

Mr. McKee had testified that at the begining of his relationship with the Thorps he had complete trust and confidence in them; that at the termination of his relationship in January, 1980, his judgment had changed. When asked to state reasons, Mr. McKee stated:

One of the reasons was that he was spending more and more time working with his horses and with Hazel than he was taking care of the ranch properly when I was paying his salary * * *. Another reason was that I * * * [believed] that he was interfering in my personal affairs with my children.

There was no objection to this testimony. When Mr. McKee was asked this question: "What were the reasons?"

MR. MONTEZ: Objection on the basis that we have gone through this before. It has been ruled on. It is hearsay and

inadmissible evidence and it is also irrelevant.

Such objections made prior to and without knowledge of what reasons would be stated by McKee were not sufficient. "It has long been the rule in this state that general objections asserting that any given testimony is incompetent, irrelevant or immaterial or that no proper foundation has been laid are not sufficient to sustain a specific objection raised on appeal." *Tobeck v. United Nuclear-Homestake Partners*, 85 N.M. 431, 434, 512 P.2d 1267 (Ct. App.1973).

McKee's testimony was properly admitted in evidence.

**D.** *There was substantial evidence to support the verdict and judgment.*

*In re Porter's Estate*, 192 Or. 483, 235 P.2d 894, 898 (1951) states:

The theory which underlies the doctrine of undue influence is that the testator is induced by various means to execute an instrument which, although his, in outward form, is in reality not his will, but the will of another person which is substituted for that of testator. Such an instrument, in legal effect, is not a will at all. Although executed by the testator, his intention to make a will is so defective that the instrument is invalid.

I concur with Judge Lopez' opinion that there is "Substantial evidence of undue influence."

Thorp and the opinion introduce into this case the subject of "suspicious circumstances." Thorp claims that "the existence of 'suspicious circumstances' must be proven to give rise to a rebuttable presumption of undue influence." The opinion adequately answered this contention. "Suspicious circumstances," introduced by a quotation from Corpus Juris Secundum in *Hummer v. Betenbough*, 75 N.M. 274, 404 P.2d 110 (1965), has never been defined. These words have been used in workmen's compensation cases. See, *Salazar v. Lavaland Heights Block Company*, 75 N.M. 211, 402 P.2d 948 (1965); *Cordova v. City of Albu-*

querque, 71 N.M. 491, 379 P.2d 781 (1962); Spieker v. Skelly Oil Company, 58 N.M. 674, 274 P.2d 625 (1954). In contract, Brown v. Cobb, 53 N.M. 169, 204 P.2d 264 (1949).

The role it plays is one that creates a presumption of undue influence or undue persuasion of Thorp to the extent that Hazel's normal faculties yielded so that the Will would not have so been made but for such improper conduct or practice. The law will not permit improper influences to control the disposition of a person's property.

We begin the process of definition by noting that a presumption of undue influence is a presumption of fact. A "presumption of fact" has been defined in many ways. See 33A Words and Phrases, Presumptions of Fact, p. 87 et seq. (1971). The presumption is to be submitted to a jury as judges of facts proved to be decided by the ordinary test of human experience. It is derived wholly and directly from the circumstances of the case by means of the common experience of mankind without the aid or control of any rules of law whatever. It infers a fact otherwise doubtful from a fact which is proved. If the presumption of undue influence is established, the jury may find as a fact that undue influence actually existed to the extent that Hazel's normal faculties yielded to the undue influence of Thorp.

To establish this presumption, we must search the record for "suspicious circumstances." Evidence, facts, events which suggest doubts or distrust of the conduct, practice or intent of the influencer in his relationship with a testator or testatrix in the preparation of a will are "suspicious circumstances." For example, Hazel, past 81 years of age, suffering with cancer while in the hospital, who knew Thorp for a period of short duration, with existing opportunities in Thorp to exercise undue influence, gave Thorp a ranch without consideration worth about $1,000,000.00 to the exclusion of her family. These are "suspicious circumstances" sufficient to establish a presumption of undue influence to submit as a question of fact to a jury. In fact, it has been held that "[t]he 'variance' between the testator's first will and a later will was regarded as a 'suspicious circumstance' justifying an inference of undue influence * * *." In Re Reddaway's Estate, 214 Or. 410, 329 P.2d 886, 892 (1958).

The most profound opinion yet written in New Mexico on the subject of undue influence, over half century ago, was that of Justice Bratton in Cardenas v. Ortiz, 29 N.M. 633, 226 P. 418 (1924). We must keep in mind that undue influence, a wrong practiced in secrecy and circumvention, not traceable to open declarations or proclamations of the wrongdoer, but by indications which are usually attended with studious efforts to conceal, is not susceptible of direct proof, but must be concluded from the facts and circumstances proven. This concept establishes how sensitively the doctrine of undue influence operates.

The physical and mental condition of Hazel is a factor of importance in determining whether the disposition of her property was the result of undue influence. The fact that she could have been unduly influenced due to the enfeeblement of mind or body is evidence that her free will had been affected. The jury need not find that her mind was captured by another. Mental and physical weakness is merely a circumstance in determining whether the persuasion was improper and an unfair advantage resulted. It is apparent from the evidence that her mental and physical condition made her an easy mark for one who might wish to influence her.

At the time of the execution of her Will, Hazel was not of unsound mind but she was in such mental and physical infirmity that she could be easily influenced in the preparation of her Will. See Ostertag v. Donovan, 65 N.M. 6, 331 P.2d 355 (1958) in which a patient, 83 years of age, while in the hospital with Parkinson's disease, made a gift of $6,000.00 to the doctor. The doctor failed to meet the burden of showing that the gift was made under circumstances fair in all aspects and free of undue influence. The gift was rescinded by the trial court and affirmed on appeal.

The instrument executed by Hazel as her Will is invalid. If a valid prior Will which was revoked is in existence, that prior Will takes precedence over any inheritance by intestacy.

In all other respects, I also concur in the Opinion of Judge Lopez.

WALTERS, Judge (dissenting).

I do not agree with the majority opinion in the following particulars:

1. There is a distinction between the court having discretion to order a trial by jury if the parties have failed to make a timely demand when the issues are those covered by New Mexico Rule 38, and when the court may order a trial by an advisory jury, or a jury trial by consent of both parties (Rule 39(b) as opposed to Rule 39(b)). There is no constitutional nor common law right to trial by jury in probate matters, see *Sheley v. Shafer*, 35 N.M. 358, 370, 298 P. 942 (1931); *State v. Ninth Judicial District*, 40 N.M. 331, 334, 59 P.2d 893 (1936); *Frock v. Fowlie*, 80 N.M. 506, 507, 458 P.2d 581 (1969). The right to a jury trial in a probate matter is now conferred by § 45-1-306, N.M.S.A. 1978, if timely demanded.

Rule 39(a) may not be read to grant the trial court the right to order a trial by jury upon its own motion. Rule 39(b) allows the court to call an advisory jury "upon motion or of its own initiative." The absence of the language "or of its own initiative" in Rule 39(a) requires that "upon motion" in Rule 39(a) mean "motion of one of the parties." The motion for jury trial made by a protestor to the will in this case apparently was denied, since the order allowing a jury explicitly recites that trial by jury was ordered by the court *on its own motion*.

I do not read Rule 39 to grant the discretion to the trial court to act upon its own motion *except* to order an advisory jury.

2. I do not agree that McKee's testimony had anything to do with the existence of undue influence in July of 1979, which would permit New Mexico to rely on the quotation from *Page* to sustain its admis-

sion. Thorp's alleged non-performance of employment duties to McKee, and Thorp's conversation regarding McKee's business with McKee's children, are totally unrelated to the exertion of any influence by Thorp over Hazel, or to the "disposition to exert undue influence" on her.

*In re McNamara's Will*, the New York case cited in the majority opinion, was based upon language in the case of *In re Frank's Estate*, 165 Misc. 411, 1 N.Y.S.2d 482 (1937), in which other New York cases were quoted to the effect that the *declarations*, written or oral, *of the testator* are admissible as bearing upon the decedent's mental capacity and the condition of the testator's mind regarding the objects of his bounty, and to show the testator's relations to those around him and the persons named as beneficiaries. "They are, however, entitled to no weight in proving external acts, either fraud or undue influence" and are admissible "only for the limited purpose of showing the strength or weakness of the testator's mind. They may not be extended to show affirmative or external proof of undue influence."

Mr. McKenzie's evidence was tendered "to show the relationship, the trust and confidence between decedent and Mr. Thorp, and secondly * * * matters ancillary to that." Some of McKenzie's evidence showed testator's relationship to Thorp, but McKenzie's interpretation of that relationship (if that is "ancillary") is not allowed by the New York cases upon which the majority opinion relies. Additionally, the jury was not instructed that it would be permitted to hear such testimony for the limited *allowable* purposes of such testimony.

Protestant's counsel further argued that the evidence would show that the "confidential relationship is used for self-serving purposes by Mr. Thorp." That purpose is not recognized by either the New York cases or by *Page*.

The jury was instructed that "undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it was made. McKee's evidence had nothing to do with

undue influence at the time the will was made. Moreover, counsel stated in his opening statement at trial that testator's incoherence and incapacity at the time of executing the will was not a contention in the proceeding.

Under the above criteria, certainly *McKee's* evidence was not admissible for any purpose relevant to the questions in this case. *McKenzie's* testimony, as stated by the majority, "sheds light on the relationship between the testatrix and a primary beneficiary" at the time of the events testified to by McKenzie regarding the lease he was attempting to negotiate. It does indicate "an ongoing relationship" and "the extent to which Hazel trusted Thorp up to the time of her death," but those factors are not at all concerned with whether Thorp unduly influenced Hazel at the time the will was executed four to six months earlier. Nothing in the evidence of either McKee and McKenzie concerned a *declaration of the testator* which would have been probative of her state of mind at the time she executed the will.

Thus, (a) I do not believe that the evidence of McKee and McKenzie was properly limited or offered for a purpose recognized under own Rules of Evidence, and its prejudice outweighed any relevance to the issue to be decided; (b) evidence of Thorp's character, as testified to by McKee, was inadmissible under *State v. Bazan*, 90 N.M. 209, 561 P.2d 482 (Ct.App.1977). It is illogical to conclude, as the majority opinion seems to do, that character evidence of a beneficiary may be admitted in an undue influence situation, at the same time as the opinion recognizes that such evidence is not an element of undue influence. The opinion discusses the "disposition to exert undue influence," which is *not* an element in New Mexico, yet concludes that such evidence was "properly admitted." I am unable to follow such reasoning. If McKenzie's and McKee's testimony relating to Thorp's character is intended to be declared admissible because it shows Thorp's actions in conformity therewith, such a ruling of admissibility is contrary to New Mexico law. *See* N.M.R.Evid. 404(b).

I would reverse this case on the grounds that inadmissible evidence was admitted, and that the trial court was without authority to order a jury trial on its own motion. The majority holding otherwise, I respectfully dissent.